# CHARLESTON

## SHORE v. BOARD OF CANVASSERS.

Submitted December 17, 1908.     Decided December 22, 1908.     | 64    705
                                                                   | f64   716

1. ELECTIONS—*Counting Ballots*.

Section 34 of chapter 3 of the Code, as amended by chapter 21, of the Acts of 1908, allows great liberality in the interpretation of election ballots. It mandatorily requires ballots to be counted whenever it is possible to ascertain the intention of the voter. (p. 710.)

2. SAME—*Ballots—Marking*.

When two or more offices are to be filled by an election and the names of all the candidates therefor are printed opposite each other on the respective tickets, in groups, and the voter, by marking in a circle, selects one ticket and then places a mark before the

name of a candidate for one of these offices on another ticket, the ballot is countable for all the candidates on the ticket selected except the one whose name is directly opposite the name of the candidate so marked on such other ticket.   (p. 708.)

Petition by John J. Shore for writ of *mandamus* to the Board of Canvassers of Wood county.

*Writ Refused.*

F. H. McGREGOR, for petitioner.
WM. H. WOLFE, for respondent.

POFFENBARGER, PRESIDENT:

John J. Shore, a candidate, in the November election, for Justice of the Peace in Wood county, having been awarded a *mandamus nisi*, commanding the board of canvassers of said county to count certain ballots for him and reject certain ballots, counted by them for that one of his competitors, who, according to the supposedly erroneous declaration of the result, had received more votes than he, or show cause why a peremptory writ should not be awarded, compelling them to do so, and they having made a return thereto, showing, in their opinion, sufficient cause; the question is whether a sufficient number of the ballots were wrongly counted to make up the plurality of fourteen votes found in favor of said Shore's competitor, W. P. Rathbone.

The number of ballots counted against the plaintiff, over his objection, is large, and all the objections were based on the markings of the ballots by the voters. These markings were varied, but many of the ballots were marked exactly alike, and others similarly, so that they are susceptible of grouping and classification.   In many instances the intention of the voter was made so apparent by the marks put on his ballot that we deem it unnecessary to discuss them. Indeed, on the examination of every ballot, the counting or rejection of which is challenged, we have found only a few failures to give effect to the clearly expressed intention of the voter, not enough to change the result. However, we deem a few of the questions raised worthy of discussion.

There were six tickets on the ballot sheet, the democratic,

socialist, independence league, prohibition, independent and republican, named from left to right. On each of the first two, there were two candidates for justice of the peace, none on the next two, one on the fifth and two on the last. The leading candidates were on the democratic and republican tickets. On the former were H. G. Butcher and John J. Shore and on the latter R. H. Thomas and W. P. Rathbone; Butcher's name being opposite that of Thomas and Shore's opposite that of Rathbone. Some voters, after having selected the republican ticket, by placing a cross in the circle under the emblem, placed a cross before the name of Butcher on the democratic ticket, and others, selecting the republican ticket, opposite the name of Ruttencutter on the independent ticket, put a cross before the names of Butcher on the democratic ticket and Thomas on the republican ticket. In all such instances, the ballot was counted for Butcher, or Ruttencutter, as the case happened to be, and Rathbone, the board regarding the marking of a name opposite that of Thomas as signifying intention not to vote for him and to vote for the person whose name was marked. The objection is to the counting of the ballot for Rathbone, the contention being that there is nothing to indicate which of the men whose names are not specially marked the voter intended to vote for, there being several of them. In other instances, the democratic ticket was selected, and a name marked on one of the other ballots, raising the same question as to whether it should be counted for Shore, or Butcher, as the case happened to be.

We rule that they were properly counted. By selecting the republican or democratic ticket, in the manner prescribed by the statute, placing a cross in the circle, the voter signified intention, for the time being, to vote for every person whose name was on it. That was the effect of making a mark in the circle. The statute so declares. Having done that, he could alter the effect of that mark, by placing a cross mark in the square before the name of a candidate on the opposite ticket. The statute declared the effect to be a manifestation of intent to vote for the man whose name is so marked and not to vote for his competitor, whose name is directly opposite. To say this statutory rule is to be varied or ignored when it happens that

there are two or more candidates on each ticket for the same office, on the theory of lack of any marking to show which of the two or three it was the intention of the voter to displace by the man chosen on the opposite ticket, seems to us not to be based on any substantial reason. It is a question of intention, not one of arbitrary rule. We are not to assume that the voter intended to vote for only one justice, there being two to elect, or one member of the house of delegates, there being two, three, four or five to elect. On the contrary, we must presume he intended to vote for as many as he lawfully could. We must also assume that, in preparing his ballot, he was influenced by his knowledge of the legal rules or directions for preparation of ballots, that he knew he had selected a straight ticket by his first step and that, in all ordinary cases, the marking of a name on another ticket operated a rejection, or elimination from the selected ticket, of the name thereon opposite the one so marked. This makes clearly manifest the improbability that the intricate distinction between cases in which but one officer of a kind is voted for and those in which two or more are voted for ever occurred to the average man while preparing his ballot. He followed the plain letter of the statute. Are we to assume that he did not intend to do so, because, as a lawyer, he perceived room for a legal question as to whether his act was within the spirit of the statute? Hardly. Comparatively few of the voters belong to the legal profession.

Several questions are presented as to the sufficiency of markings to show selection of a ticket on the ballot sheet. In one instance, there is only a straight mark in the circle, in another the word "Straight" is written in it, and in another a cross is placed under or near the emblem outside of the circle. These were all good ballots, and properly counted. In some cases, the voter placed cross marks in all the circles but one, or crossed out the headings of all tickets but one, or defaced all but one by lines drawn from top to bottom or partially through them; and, in one case, the voter covered all the tickets but one with a large "X." These were sufficient indications of intent to select the ticket unmarked.

In some instances, no selection of an entire ticket was made. The voter marked the names of the candidates he desired to vote for wherever he happened to find them on the ballot sheet, and, for some of the offices to be filled, he marked no candidate's name. These ballots were properly counted only for candidates whose names were marked.

There are instances in which, after selecting a ballot, the voter placed cross marks before the names of two candidates for justice standing opposite each other, one on the selected ticket and the other on a different ticket. These were properly counted for the candidates whose names were marked, the intention being clearly indicated by the secondary marking of particular candidates. The selection of the ticket disclosed general intent, while the marking of candidates evinces specific or particular intent.

A ballot improperly rejected has a cross mark in the circle on every ticket except the democratic. Here the plainly expressed intent was to make a selection by defacing all the tickets but one, on the principle of selection adopted before the statute was amended by the Act of 1908. Another ballot improperly rejected has cross marks in the circles under the democratic and republican emblems and crosses before the names of nearly all the names of democratic candidates, including those of Butcher and Shore. Where the names of democratic candidates are not marked the names of their opponents are. We ignore the general markings in the circles and regard only those made for particular candidates, it appearing that the voter, by individual or particular markings, indicated his choice as to every office in question. Ballot No. 29 is designated as having been counted for Butcher and Rathbone, but we are inclined to the opinion that this is a mistake in designation, since the board properly counted many others marked the same way for Thomas and Shore. There is a cross in the circle on the democratic ticket and crosses before the names of Thomas and others on the republican ticket, but none before that of Rathbone. It should have been counted for Thomas and Shore. Ballot No. 273 was improperly counted for Rathbone. There is a cross in the

circle on the republican ticket, one before Butcher's name and one before the name of Ruttencutter on the independent ticket, directly opposite and between the names of Butcher and Thomas. It should have been counted for Butcher and Ruttencutter whose names are specially marked. These are all the errors discovered, and they wholly fail to overcome the adverse plurality of fourteen.

The amendment of section 34 of chapter 3 of the Code, made by chapter 21 of the Acts of 1908, works a radical, and perhaps wholesome, change in the rules applicable to the interpretation of ballots. It allows great liberality of construction in seeking and giving effect to the intention of the voter. It says: "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice." Besides it expressly gives direction for preparing ballots in three different ways. Nowhere does it say a ballot not prepared in conformity with the directions shall be rejected. These great changes make the decisions, in which said section was construed before it was amended, almost wholly inapplicable to it as it now reads.

For the reasons here stated, the return of the board of canvassers is held sufficient and the writ prayed for refused.

*Writ Refused.*

BRANNON, JUDGE, (*dissenting*):

I do not agree with the majority in one respect, that is, as to ballots of the type of No. 3. In Parkersburg district are two justices. The democratic candidates were Butcher and Shore, Butcher's name being printed in the democratic column first and Shore's next. The republican candidates were Thomas and Rathbone, the name of Thomas printed first in the republican column, and Rathbone's next. The voter put a cross in the circle at the head of the republican column. He made a cross in the square before the name of Butcher in the democratic column. Thus he clearly voted for Butcher. All say so; but for whom for the second justice? He made no further indication of purpose. He put no cross before the name of Shore, the other democratic candidate, nor before either of the names of the two re-

publican candidates. These three names are left as printed, no erasure, no mark. The majority of this Court say that the voter for second justice voted for Rathbone, because, only because, the name of Butcher is directly across the sheet from the name of Thomas, and that he did not vote for Thomas, but erased his name as effectually as if he had with a pencil erased it; and that he voted for the second republican, Rathbone. This comes, not from anything the statute says shall be done in such case, but only because the name of Butcher and Thomas stand first in order in their columns. This accidental circumstance that one name stands before the other governs. I do not think so. My position is, that the voter had four names on these columns for choice, and he has. shown purpose to vote for only one. We cannot say for which of the two republicans he intended to vote. He could vote for only one, and he has not signified for which one. If he intended to vote for either republican, why not use a cross before his name as he did before Butcher's name? He has made no choice between them by making a cross before the name of either of the republicans or erasing the name of either, or in any way signified between them. By voting for Butcher he has disabled himself from voting for both republicans, and has not, by any sign, chosen between them. He has left his second vote uncertain, uncountable. He has voted only for Butcher. He is counted against Shore erroneously. Butcher was not running against Thomas any more than against Rathbone. By the cross in the circle on the republican ticket the voter has signified intent to vote for the republican justices, one as well as the other. As he discarded one by the cross before Butcher's name, we may as well say he intended to vote for the first republican in order, Thomas, as the last. You could not say this as to Shore; because the voter has not signified any intent to vote for him by a cross at the top of the democratic ticket; but he has as to the republicans by the cross in the republican ticket, and that intent may be as well said to be in favor of the first name on the republican ticket as the second; rather for him than the second. I note that the statute itself says that where there is uncertainty as to candidates the vote is lost. " If the voter mark more names than there are persons to be

elected to an office, or if, *for any reason*, it is impossible to determine tho voter's choice for an office; his ballot shall not be counted for such office." Why? Because we know not which he would have selected of three, if he had known he could vote for two only. Here the voter has signified intent to vote for three. We cannot tell for which two he intended, except Butcher. Here is uncertainty. And if we cannot say he has voted for three, as we cannot, still there is uncertainty, because the voter has voted for Butcher, leaving Thomas and Rathbone without mark or sign and we cannot say for which he *intended* to vote. There must be *intent manifested* for a good vote. How do we know that he intended to vote for Rathbone? We know nothing of his intent from the location of names on the ballot. The ballot commissioners did that. The voter had nothing to do with it. No inference of his intent can be drawn from that circumstance.

The Iowa act provides for a party name at the head of a ballot, and a circle, and provides for a cross in it to indicate a straight party ticket, and provides squares before names of candidates, and provides that a mixed ticket may be made by a cross in the circle and by a cross before the names of candidates on other tickets in the square. These provisions are like our statute. It contains, word for word, the clause of our statute above quoted. The voter put a cross in the circle in the democratic column, and put a cross before the name of a candidate on the republican ticket, leaving three names in the democratic ticket, the number of justices to be elected, unmarked. The court in a labored opinion said: "None of the squares opposite the names of candidates for justice of the peace printed under that appellation are marked, but the square opposite the name of the contestant on the republican ticket is marked. The facts, that the party appellation of one ticket and the name of the contestant on the other were marked, and that the name of the contestant was opposite and on the same line with that of Moore, do not show that the voter intended to vote against Moore and for the other democratic nominees. There is no sufficient ground for saying that one person is a candidate against

another, because their names are printed in the same order, and opposite each other on the ballot. When there is more than one candidate on each ticket for an office, each voter decides for himself whom he will regard as opposing candidates. That is shown by the markings on the second and third illustrations we have given, where names arranged in the same order and printed in the same line are both marked.

The question presented is, How many names of candidates for the office of justice of the peace are marked on the two tickets? The method by which the voter may indicate his choice of candidates are two: 1. By making a cross in the appropriate place preceding the party appellation; 2. By making a cross in the appropriate place preceding the name of a candidate. In the first method, the party ticket is marked, and the names of the candidates for whom the voter wishes to cast his ballot are indicated, but strictly speaking, it cannot be said that the names on the ticket are marked. By the second method, the ballot is marked, it is true, but it is done by marking the names of the candidates for whom the ballot is to be cast. In one method, the ticket may be said to be marked; in the other, the names of candidates; and both methods may be used on one ballot. We conclude that, within the meaning of the law, the name of but one candidate was marked on the ballot abstracted in our first illustration. But the statute says that, where a ballot is marked with a cross in the circle preceding a party appellation, it 'shall be counted as cast for all candidates named under the appellation or title which has been so marked, except as to the officers to which he has placed such mark preceding the name or names of some other candidate or candidates printed under the title of some other party, or group of petitioners.' In the first illustration, the voter marked the circle of the democratic ticket, thereby indicating that he intended to vote for the three candidates for justice named on that ticket, excepting as that intention was effected by marking the name of the contestant on the other ticket. But we are wholly unable to determine for which of the democratic candidates the voter intended to cast his ballot. As marked, it is a ballot for four candidates, where but three can be

elected. One of the four is clearly pointed out in the manner provided by the law as a candidate for whom the ballot must be counted, but there is nothing to indicate any preference of the voter in regard to the candidates on the democratic ticket. It is a case where it is impossible to determine the voter's choice for two of the places to be filled, not because he has marked more names than there are persons to be elected, but because he has cast his ballot for three persons for places to which but two can be elected. His ballot was intended to be cast for the contestant, and that intention has been expressed in the manner provided by law. It should, therefore, be counted for him, but cannot be counted for any other candidate for the office of justice of the peace." *Whittam* v. *Zahorik*, 91 Iowa 23, (51 Am. St. R. 322).

Just so in our case. The voter has voted for three, when he could vote for only two. Our statute says the cross in the circle "will cast his vote for every candidate on the ticket of such party, except for offices for which candidates are marked on other party tickets, and the cross-marks before the names of such candidates will cast his vote for them." Thus this voter voted for two republicans and Butcher. Then the statute quoted says that when he votes for more candidates than the law allows, his ballot shall not to be counted. He erased neither republican. It is impossible to say how he *intended* to vote, except by guess, and we must have *manifest intent.*

Another consideration, and one of force, is, that this voter preferred as first choice Butcher, and wished to vote for him only, fearing that a vote for either Thomas or Rathbone might defeat Butcher, as it might have done. Hence he intended to vote only for Butcher. He thought as he crossed before Butcher's name, that his vote would be only for him.