# CHARLESTON.

STATE *ex rel.* RAY LAMBERT *v.* BOARD OF CANVASSERS OF NICHOLAS COUNTY *et al.*

(No. 6438)

Submitted December 11, 1928.   Decided December 12, 1928.
Written opinion filed January 15, 1929.

*Emmett Horan, A. F. McCue* and *M. F. Matheny,* for relator.

*Jno. T. Simms, E. H. Morton, O. C. Lewis* and *A. N. Breckenridge,* for respondents.

WOODS, JUDGE:

On a canvass of the returns of the election held in Nicholas county on November 6, 1928, for the office of sheriff, W. E. Morton, democrat, received 3,795 votes and Ray Lambert, republican, 3,776. Lambert, together with the republican candidates for prosecuting attorney, commissioner of the county court and member of board of education in one district, demanded a recount. A total of 210 ballots were questioned by the several candidates during the progress of the recount. These ballots, pursuant to an agreement entered into between the candidates at the beginning of the recount for the four foregoing offices, were laid aside, and taken up and considered last. The recount closed on November 27th, Morton and Lambert having a total 3,794 each. The board, however, did not declare the result on that day, but adjourned over to December 3rd, at which time the 210 ballots in dispute were again recounted and Morton declared elected by a majority of twelve votes, and a certificate of election issued to him. Indorsements were made on the backs of the respective ballots on December 3rd, showing how each had been counted on that day, together with additional notations as to how they had been counted on November 27th.

The present proceeding was instituted to compel the board of canvassers to re-convene and to properly count certain ballots as required by law, to declare relator to have a majority of all the votes case for the office of sheriff of said county, and to issue to him a certificate of election to said office. Relator attacks 50 of the 210 ballots aforesaid, claiming that the board, over his objection, improperly counted certain of them for Morton, and rejected and refused to count certain others for him. According to his contention if the same had been counted as required by law, he (Lambert) would have a majority of all the votes cast for said office of sheriff. Respondent Morton's answer and return to the alternative writ defends the board's action in regard to the count complained of by relator and brings 52 additional ballots from the 210 into question. Of the remaining 108 of the 210 ballots aforesaid there is no question between the parties to the present pro-

546

ceeding. Out of that number Lambert received 45 and Morton 45. Relator on the day of the hearing in this Court stated that for a basis of arriving at the result of the election that the Court should assume that Morton had 3,745 and Lambert 3,733 votes, exclusive of said 210 ballots which were presented in open court. And this was agreed to by counsel for respondent in open court.

In section 34, chapter 3, Code, certain methods of marking a ballot are prescribed, by the use of which a voter may declare his intention. However, these methods are not exclusive, and a failure to strictly observe them will not necessarily render a ballot invalid, if the voter's intention can be determined by an inspection of his ballot when cast. *Johnson* v. *Board of Canvassers,* 102 W. Va. 703; *Hatfield* v. *Board of Canvassers,* 98 W. Va. 41; *Shore* v. *Board of Canvassers,* 64 W. Va. 705. Under the statute, if a voter desires to vote a straight ticket, he may do so by placing a cross in the circle under one of the party emblems, by defacing the tickets other than the one desired to be voted by him, or by placing an X before the names of every candidate on a particular ticket. And, if he desires to vote a mixed ticket, or, in other words, for candidates of different parties, the statute provides certain rules whereby he may indicate such an intention. In so voting he has the privilege of voting for one candidate for each office, regardless of the ticket upon which the candidate's name appears, or for a candidate for one office, and for none other, if he cares to vote for but one.

Among the contested ballots are nineteen which have but one mark—an X in the square to the left of either the first republican or first democratic presidential elector. Six such were counted as straight republican tickets and counted for relator, and thirteen as straight democratic tickets and counted for respondent Morton. Morton contends that it was the clear intention of the voters of this group to vote a straight ticket. Can we say that placing an X in front of the name of the first presidential elector, or before all of the presidential electors on either one of the foregoing tickets carries an intent to vote the straight ticket? In the case of *Frazier* v. *Board of Canvassers, supra,* ballots wherein the

voters had not selected a ticket as provided by statute were counted for only the first presidential elector and such other candidate or candidates (whether on the same or different tickets) as had an X before their names. One of the ways provided by statute for voting a mixed ticket, or in other words for candidates of different parties, is for the voter to omit making a cross in the circular space above the name of the party, and make a cross mark in the blank space before the name of each candidate for whom he desires to vote on whatever ticket the name may be. In the case of *Houston* v. *Steele*, 98 Ky. 596, under similar conditions, it was held that the placing of a cross-mark before the name of the first presidential elector on a party ticket did not constitute a vote for each party candidate on said ticket, but only for the candidate before whom the mark is made. There the voter had a right to select a ticket, as in this state, by placing an X anywhere in the large square at the head of the ticket which contained the party emblem and name. And the reason is given there that, since the statute provided a means by which a voter could vote a selective ballot, and a means whereby a voter could vote for the first presidential elector exclusively, if he chose to do so, that the fact that an X appeared there made it a vote for that candidate and a vote for no one else. Such must be our holding in the instant case. The ballots should not have been counted for the office of sheriff. There are 35 ballots closely akin to those just discussed, in which the voter has, in addition to a cross in the square before the name of the first presidential elector, either placed an X before one or more candidates on the same ticket, or on a different ticket, or both. A few of this group have an X placed before the names of two or more or all of the presidential electors of a particular party. The intention was to vote for those candidates X'd. This throws out nineteen ballots counted for Morton and sixteen ballots counted for Lambert.

There is another general class of ballots where an X appears before the name of the presidential and in some instances before the names of both the presidential and vice-presidential candidates. Ballot 3, Precinct 4, Wilderness District, has an

X in front of the name of Herbert Hoover. No other markings on the republican ticket. An X appears in front of the names of the democratic candidate for assessor and for justice of the peace. Under our ruling in *Hatfield* v. *Board of Canvassers, supra,* on "City Hall No. 8" and "City Hall No. 11" the ballot under consideration was properly counted for Lambert. Likewise, Ballot 1, Precinct 1, Summersville District, which has an X to the left of the name of Herbert Hoover, and no other markings on the republican ticket, the name of Alfred E. Smith on the democratic ticket marked out, and vertical lines drawn through the workers, the socialist and the prohibition tickets, respectively, was properly counted for Lambert. Ballot 3, Precinct 1, Jefferson District, however, in addition to an X in front of the name of Herbert Hoover, has an X in front of the name of the republican candidate for county commissioners, and an X before the name of the democratic candidate for director Nicholas county high school. "City Hall No. 10" in *Hatfield* v. *Board of Canvassers, supra,* is controlling here. The ballot was improperly counted for Lambert. The fact that the voter has used the means prescribed by statute in voting for county commissioner shows that he intends to vote for the individuals X'd. Eight other ballots similar to the ballot just discussed were improperly counted for Lambert. Morton likewise loses six such ballots. According to the ruling in the case of *Hatfield* v. *Board of Canvassers, supra,* an X before the name of the presidential nominee indicates a straight ticket, providing no other candidates are voted for in the same ticket to negative such intent. Such voting is without the statute, and the Court looks to the intent of the voter in so far as that intent can be ascertained.

Ballot 3, Precinct 8, Beaver District, was marked by placing an X to the left of the circle at the head of the republican ticket, and to the left of the names of a number of candidates, other than Lambert, on the republican ticket. An X also appears before the names of the democratic candidates for U. S. Senate, prosecuting attorney and constable. This ballot was properly counted for Lambert. In this instance the voter is showing an intent to adopt the statutory method of

designating a ticket by placing an X in the circle at the head of the ticket, and has substantially complied therewith.

Respondent objects to the counting of seven absent voters' ballots for Lambert, on the ground that they were not signed by the poll clerks. While each of the foregoing ballots carry the signature and seal of the clerk of the circuit court, respondent contends that a general objection placed the burden on the relator of producing evidence to show that the ballots were otherwise regular under the statute, or that the statute had been complied with with respect to affidavits, *et cetera.* In *Hatfield* v. *Board, supra,* it was held that the presence of the clerk's signature and seal are sufficient identification of the ballots. We are of opinion that if the respondent desires to press his claim regarding the fact that the proper affidavits had not been filed and that the statute had not otherwise been complied with, it is for him to produce proof to that effect, since the ballots with the signature and seal makes them *prima facie* regular on their face.

The voter on Ballot 3, Precinct 1, Summersville District, did not designate a ticket, but placed an X before the names of several candidates on both the democratic and republican tickets. The name of W. E. Morton is marked out and over that name is written the name of Ray Lambert. And in a similar ballot (Ballot 19, Precinct 1, Summersville District) the name of Ray Lambert is written over the printed name of W. E. Morton. It is clear that the intention of the voter in each instance was to vote for Lambert. These ballots were properly counted for him.

In the next four ballots the question arises as to whether or not an X placed in a square to the left of a blank space for a particular office in the workers ticket is tantamount to a vote for the democratic candidate for that office. The relative positions of the several tickets on the ballot, reading from left to right, are: democratic, workers, socialist, prohibition and republican. Ballot 1, Precinct 6, Beaver District, has an X in the circle at the head of the republican ticket. While this X is blurred slightly, it is a proper marking for a republican ticket. While an X appears before the names of several republican candidates, none is found before the name of

Lambert. An X appears in front of the name of the democratic candidate for state senate. In the workers ticket an X appears in the square to the left of the blank for candidate for U. S. Senate, sheriff and constable. This ballot was counted for Morton. We are of opinion that the same should have been counted for Lambert, under our ruling in *Frazier* v. *Board of Canvassers, supra.* A very different situation, however, is presented by Ballot 1, Precinct 3, Kentucky District. There an X appears in the circle at the head of the republican ticket. Horizontal lines are drawn through the names of the republican candidate for state senate, sheriff, assessor, house of delegates and member of board of education, and in the workers ticket an X appears in the squares to the left of the blanks for each of the offices aforesaid. No markings whatever in the democratic ticket. This ballot was correctly counted for Morton. The fact that there were only two candidates for each of the foregoing positions (those on the democratic and republican tickets), and that the names of the republican candidates have been stricken out, makes it clear that the voter intended to vote for Morton. Ballot 4, Precinct 4, Wilderness District, has an X in front of the name of the republican candidate for member of the board of education; an X in front of the name of the first prohibition elector; and in the workers ticket an X appears to the left of the blanks for the office of sheriff, county commissioner, assessor and justice of the peace. No other markings on the ballot. Ballot 2, Precinct 4, Wilderness District, has no markings on either the democratic or republican tickets. In the workers ticket, however, an X appears in front of the names of the first two presidential electors, as well as in the squares to the left of the blank for governor, judge of the supreme court of appeals, state senate, prosecuting attorney, county commissioner and house of delegates. The last two described ballots were counted for Morton. We are of opinion that the same should not have been so counted.

Ballot 1, Precinct 2, Beaver District, has an X in the circle at the head of the democratic ticket, and an X to the right of the names of Morton and the democratic candidate for prosecuting attorney. The X after Morton's name does not

cross the name. Both X's are within the limit of the ticket. There is one X on the republican ticket and that is before the name of Ray Lambert. We cannot say what was the intent of the voter. The ballot was improperly counted for Lambert. Ballot 1, Precinct 2, Hamilton District, has an X in the circle at the head of the republican ticket, as well as to the left of the eight presidential electors and every other candidate on republican ticket with the exception of Dan Rader, for assessor. The democratic ticket carries an X in front of W. E. Morton. Cannot say what was intent of voter. Was properly not counted for either Morton or Lambert. Ballot 8, Precinct 2, Kentucky District, an X in circle of republican ticket and in front of name of Ray Lambert. In democratic ticket an X appears before the name of W. E. Morton. This ballot was apparently not counted for either and properly not so.

Ballot 13, Precinct 4, Kentucky District, in the circle at the head of the republican ticket a light X appears which bears evidence of erasure. Other X's in ticket but none before name of Lambert. In the circle at the head of the democratic ticket appears an X. It seems that another X had been made before the one mentioned and had been partially erased. This ballot was counted for Morton, and we believe correctly so.

Ballot 3, Precinct 4, Hamilton District, an X appears in front of the names of each candidate on the democratic ticket. No markings on the republican ticket. While there is a blur over the X in front of the name of W. E. Morton, we see no effort at erasure as contended for by relator, and we are of opinion that this ballot was properly counted for Morton.

Ballot 2, Precinct 1, Kentucky District, an X appears in the circle at the head of the republican ticket. No other markings on ticket. A smaller X appears in the circle at the head of the democratic ticket. This latter X shows signs of erasures. No other markings on democratic ticket. Was properly counted for Lambert.

Ballot 13, Precinct 1, Summersville District, an X appears in the circle at the head of the republican ticket. Beginning with the name of Charles Curtis, a broken vertical line runs

through the rest of the ticket to the bottom. The democratic, workers, socialist and prohibition tickets are marked by vertical lines extending throughout the length of each, beginning with and including the first presidential elector. The board of canvassers properly refused to count this ballot for either candidate for sheriff.

Ballot 1, Precinct 4, Kentucky District, in democratic ticket an X appears before the names of the candidate for U. S. Senate, and others further down on the ticket, but none appears before the name of W. E. Morton. Several names stricken out. No markings on republican ticket. Was not counted for sheriff, and properly so.

Ballot 1, Precinct 3, Beaver District, the republican ticket is marked out by a vertical line starting in the center of the circle at the head of the ticket, running through the names . of Herbert Hoover, Charles Curtis and the eight republican presidential electors. No other markings on republican ticket. In the circle at the head of the democratic ticket appears an X. Beginning with and including the name of the democratic candidate for U. S. Senate a vertical line is drawn through the remainder of the ticket, including the name of Morton. This ticket was properly not counted for sheriff.

Ballot 3, Precinct 3, Beaver District, has a vertical line extending through the names of Herbert Hoover, Charles Curtis and the eight republican presidential electors. An X appears in the circle at the head of the democratic ticket and beginning with and including the name of the democratic candidate for U. S. Senate, a vertical line is drawn through the names of the remainder of that ticket. This ballot was properly not counted for sheriff.

On Ballot 4, Precinct 5, Beaver District, an X marked with a heavy black pencil appears in the circle at the head of the republican ticket. One heavy black mark bearing evidence of erasure, appears in the circle at the head of the democratic ticket. This latter mark looks as if the party had started to make one of the cross-arms of an X. This ballot was properly counted for Lambert.

Ballot 6, Precinct 1, Summersville District, has a horizontal

line drawn through the words "Republican Ticket", and like lines through the names of Herbert Hoover, Charles Curtis, the eight presidential electors, and a number of other candidates on the republican ticket, including that of Lambert. A number of scattering X's appear on the republican ticket. The name of Alfred E. Smith, Joseph T. Robinson and the eight democratic presidential electors and other candidates down the ticket have a horizontal line drawn through them. Scattering X's appear in the democratic ticket. An X appears in front of the name of W. E. Morton, and also a line drawn through his name. This vote was properly not counted for sheriff.

Ballot 5, Precinct 3, Jefferson District, has an X before the names of the republican candidate for prosecuting attorney and assessor. On democratic ticket several scattering X's appear including the name of the candidate for state senate. Directly below the name of the candidate for state senate appears that of Morton, with a naught or cipher before his name. Was counted for Morton, but should not have been counted. *Johnson* v. *Board of Canvassers*, 102 W. Va. 703.

Ballot 1, Precinct 2, Jefferson District, has an X in circle at head of republican ticket. In democratic ticket an X to left of name of Alfred E. Smith and the eight democratic presidential electors, and before the name of the candidate for justice of the peace. Voter selected his ticket in manner provided by statute. Was properly counted for Lambert.

Ballot 4, Precinct 10, Beaver District, an X in circle at head of democratic ticket. An X in front of eight republican presidential electors, and an X in front of name of the republican candidate for assessor. Was properly counted for Morton.

Ballot 8, Precinct 8, Beaver District, was counted for Morton, and Ballot 9, Precinct 8, Beaver District, was counted for Lambert. Neither of these had the words "Official Ballot" printed on the back, but both had the signatures of the poll clerks. Since it is an off-set we do not determine their validity.

Of the 102 ballots hereinbefore considered we have counted five for Morton and seventeen for Lambert. Adding this

count, together with the 45 ballots each in the 108 ballots, to the figures hereinbefore agreed to, we find that Morton has received a total of 3,795 votes and Lambert 3,795 votes. The writ will be awarded directing the board of canvassers to count the votes as above indicated and to certify the result to the county court as required by law.

*Writ granted.*

(On application for rehearing)

On petition for re-hearing, in addition to a challenge of the correctness of the Court's decision as to some of the disputed ballots above recited, it is alleged that relator has lately discovered that his counsel were mistaken when they stipulated with opposing counsel at the bar of this Court that the Court should assume that Morton had 3745 votes and Lambert 3733 votes, exclusive of the 210 ballots that were presented to the Court for determination; that as a matter of fact, exclusive of said 210 ballots, Morton had 3744 votes and Lambert 3733. In a memorandum in opposition to a re-hearing, it is urged on behalf of respondent that there was no mistake; that the said stipulated totals are correct.

As to the contested ballots we adhere to the opinion and decision as in conformity with settled rules of this jurisdiction, and deem that the relator has pointed out nothing in the decision to indicate that there should be a re-hearing of the case. Nor are we of opinion that the alleged mistake in the Morton total (exclusive of the 210 ballots) affords basis for re-hearing. If, in fact, the said total is as relator now claims, his rights thereon must be otherwise asserted.