W. A. BROWN

*v.*

PAUL J. CARR, *et al.*

(No. 9973)

Submitted July 2, 1947.   Decided July 11, 1947.

456

*Harold B. Eagle*, for relator.

*H. E. Dillon, Jr.*, and *Forest L. McNeer*, for respondents.

Fox, PRESIDENT:

An election to select a mayor and four members of the council of the City of Hinton was held on June 10, 1947. The ticket was made up by the ballot commissioners, purportedly under the provisions of Code, 3-1-10a. The Democratic party organization nominated P. J. Carr as its candidate for mayor, and four candidates for members of the council. For some reason, the Republican organization did not nominate candidates, either for the office of mayor, or for membership on the city council. The ballot was printed on one sheet of paper, on the left side of which was the Democratic ticket, with the party emblem, and a circle

immediately below said emblem, to enable voters to make a cross therein if they desired to vote a straight ticket, and on the right side of which was the Republican ticket with the party emblem and the same kind of circle, but it did not contain the printed name of any candidate. Therefore, when the election came on there was a Democratic ticket, with the printed names of five candidates appearing thereon, and a Republican ticket without the name of any candidate.

It appears from the record, that a short time before the date of the election, the relator W. A. Brown, became an active candidate for the office of mayor, and advertised his candidacy in the local newspaper, and by distribution of handbills throughout the City of Hinton. His campaign was conducted along the line of inducing voters to write his name in the Republican ticket, although, presumably, his campaign was to persuade people to write his name in the Democratic ticket as well. The significance of this campaign, and the publicity attached thereto, will appear later in this opinion.

After the polls had been closed on election day, the council of the City of Hinton, acting as a board of canvassers, canvassed the returns as they appeared from the certificates forwarded by the election officials from the eight precincts of the city. This canvass revealed that W. A. Brown, as a candidate for mayor, had received 699 votes, and that P. J. Carr had received, for the same office, 691 votes, showing that Brown had been elected by a majority of eight votes. The petition of relator alleges that this result was declared, but the answer of respondents controverts this allegation and avers that after this result was ascertained, and before the declaration of any result, Carr demanded a recount of the ballots cast in said election, and that upon such recount it was ascertained that Brown had received 689 votes, and Carr 694 votes, and thereupon the canvassing board declared P. J. Carr elected. We regard this apparent conflict as unimportant, and we will treat the action of the board of canvassers certify-

ing the election of Carr, by a majority of five votes, as the final declaration of the result of said election, subject, of course, to the determination of the questions raised herein with respect to the ballots which are here involved.

There are twenty-four ballots as to which questions have been raised relative to the correctness of the action of the board of canvassers in respect to counting or refusing to count the same, and for whom other ballots were counted. We have carefully examined these ballots. Ballot No. 19 in precinct No. 9, referred to in relator's petition is not identified, and, for that reason, we must rely wholly on the allegation of the petition in respect thereto, and not denied by respondents' answer.

These contested ballots fall into ten separate classifications:

(1) Embraces nine ballots, consisting of those upon which there is a cross in the box before the name of P. J. Carr in the Democratic ticket, and also the name W. A. Brown written in the Republican ticket, and with a cross in the box before his name. These ballots were not counted either for Carr or for Brown.

(2) Six ballots, in which the name "Brown" is written in the Republican ticket, with a cross in the box before that name. These ballots were not counted for the relator, W. A. Brown.

(3) One ballot where the name of "W. A. Bro-," appears thereon with a cross in the box before the name so written. This ballot was not counted for the relator, W. A. Brown.

(4) One ballot where the name of "W. H. Brown" is written, with a cross in the box before the name. This ballot was not counted for the relator, W. A. Brown.

(5) One ballot where there is an "X" in the circle below the party emblem on the Democratic ticket, but the name W. A. Brown is written in the Republican ticket with a cross in the box before his name. This ballot was not counted for either candidate.

(6) One ballot where there is a mark to the left and without the emblem in the Democratic ticket, with no mark of any kind in the Republican ticket, which was counted for Carr.

(7) One ballot, where in the Democratic ticket to the left, and without the box before the name of P. J. Carr there is a diagonal mark, and no mark of any kind in the Republican ticket. This ballot was counted for Carr over the objection of relator, W. A. Brown.

(8) One ballot where in the Democratic ticket there is a cross before the name of P. J. Carr, the name of W. A. Brown being written in the Republican ticket, with a cross in the box before it. The cross before the name of P. J. Carr, while it is clearly visible, bears the appearance of having been attempted to be obliterated by pencil marks. This ballot was not counted for either candidate.

(9) One ballot in which is written in the Republican ticket the name "Lawyer Brown" with a cross in the box before said name, and not counted for either W. A. Brown or P. J. Carr.

(10) Ballots numbers three and eleven in Precinct 9 are misdescribed in relator's petition. It is alleged that they were not counted for Brown, because there was an "X" before the name of Carr and an "X" before the name "W. A. Brown" in one instance, and before the name "Brown" in the other. In fact, both ballots show the name of "W. A. Brown" written in on the Republican ticket, and there is no mark of any kind on the Democratic ticket. The ballots also show that No. 3 was "counted" and No. 11 is marked "No exceptions." On this showing there can be no doubt that both ballots were properly counted for W. A. Brown.

We think this description of the ballots fairly presents the factual situation involved. The variations between the ballots attempted to be described, aside from the office of mayor, are not important. They differ in respect to other candidates voted for, and in respect to erasures, and

in the markings within the circles below the party emblems, but the important and crucial facts, as they relate to the office of mayor, are, we think, correctly stated.

It is settled law in this State that, in selecting a person for any office, state, county or municipal, a voter may cast his ballot for a person whose name does not appear on the ballot as a candidate therefor, and Code, 3-5-19, specifically provides how he may do so. The decisions of this Court uphold this right. *State* v. *Canvassing Board,* 85 W. Va. 440, 102 S. E. 104; *Brannon* v. *Perkey,* 127 W. Va. 103, 31 S. E. 2d 898. It is equally well settled that, in determining whether a ballot shall be counted, and, if so, for whom, depends on the intent of the voter, if his intention can be gleaned from the ballot being considered, or, in some special instances, from facts and circumstances surrounding the election. Courts decry any resort to technical rules in reaching a conclusion as to the intent of the voter, and in respect thereto follow a liberal policy, to the end that voters be not deprived of the exercise of their constitutional right of suffrage. Illustrating these principles, see *Dunlevy* v. *County Court,* 47 W. Va. 513, 35 S. E. 956; *Shore* v. *Board of Canvassers,* 64 W. Va. 705, 63 S. E. 389; *Phillips* v. *Board of Canvassers,* 64 W. Va. 715, 63 S. E. 392; *Hatfield* v. *Board of Canvassers,* 98 W. Va. 41, 126 S. E. 708; *State ex rel. Lambert* v. *Board of Canvassers,* 106 W. Va. 544, 146 S. E. 378; *Chapman* v. *County Court,* 113 W. Va. 366, 168 S. E. 141; *Rollyson* v. *County Court,* 113 W. Va. 167, 167 S. E. 83.

The application of these principles does not require that every ballot be counted. Where the uncertainty as to the voter's intention is such as to cause a reasonable and unprejudiced mind to doubt what the voter intended, the ballot should not be counted. Code, 3-5-19, so provides. The questions presented here bear solely on whether we can say, as to several ballots involved, what the actual intent of the voter was, and for whom he intended to vote. As a general rule, we should confine our investigation on this point to the ballot itself, because only in rare cases

would it be wise to go beyond the ballots, in attempting to ascertain the intent of a voter, although this was done in *Rollyson* v. *County Court, supra*, as will be hereinafter disclosed, and is here relied upon by both the relator and the respondents.

Before taking up the several ballots classified as aforesaid, it is proper to state, as bearing on what shall be done with some of them, that in the five precincts, namely, Nos. 4, 6, 7, 9, and 10, of the eight precincts in the city, there were thirty-two voters bearing the surname "Brown." There were two attorneys at law by the name of "Brown" residing in the City of Hinton, namely, W. A. Brown, the relator, and Percy H. Brown. In the election of June 10, one ballot was cast for Percy H. Brown for mayor. These facts are presented by affidavits, to which there was no denial or objection, and presumably to meet the contention of relator that the publicity campaign in his favor preceding the election should be considered in determining whether the several votes cast for "Brown" were intended to be cast for relator and not any other person by the name of Brown. To this extent we are asked to consider matters not appearing on the records of the election nor the disputed ballots aforesaid.

As to the nine ballots within the first classification, we are of opinion that the board of canvassers properly refused to count said ballots for either P. J. Carr or W. A. Brown. If we should select the candidate for whom said ballots should be counted, it would be the result of mere speculation and conjecture on our part, because we cannot say that we are free from doubt as to what the voter intended. The contention of relator that the fact that the voter took the trouble to write his name in the ticket clearly indicates his intention to vote for him is not tenable, and not sufficient to overcome the doubt created by the further fact that he also took pains to mark the same ballot for P. J. Carr. Clearly, the "X" placed before the names of the two candidates in said ballots, if it had been placed before the name of only one thereof, would have

definitely expressed the intention of the voter to cast his ballot for the person before whose name he placed the "X". The placing of the "X" before the name of a candidate is not always necessary, and it has been specifically held by this Court that it is not necessary where the name of the candidate is properly written in the ballot, and, of course, it is never necessary where the voter indicates his intention to cast a straight ballot by placing a cross in the circle under the party emblem, and there is no other mark on the ballot. As indicated above, it is not mandatory that every ballot be counted, and where the voter so acts as to make his intention doubtful, we cannot resort to speculation and conjecture with respect thereto. No decision of this Court requires us to do so. We are supported in our reasoning on this point by the case of *State ex rel. Lambert* v. *Board of Canvassers, supra.* That case contains the following statement in the body of the opinion: "Ballot 1, Precinct 2, Beaver District, has an X in the circle at the head of the Democratic ticket, and an X to the right of the names of Morton and the Democratic candidate for prosecuting attorney. The X after Morton's name does not cross the name. Both X's are within the limit of the ticket. There is one X on the Republican ticket and that is before the name of Ray Lambert. We cannot say what was the intent of the voter. The ballot was improperly counted for Lambert." That is the same situation as exists with respect of ballot No. 2 in precinct No. 9, except that in that ballot there is a cross in the circle under the Republican party emblem, and a cross before the name of P. J. Carr; whereas, in the *Lambert* case there was a cross in the Democratic ticket and an "X" before or after the names of the candidates for sheriff in both tickets, and this Court held that the ballot could not be counted for either of said candidates. Of course, the two situations involve the same principle. Of the nine ballots mentioned, on two of them there is a cross in the circle under the Republican party emblem. On the other seven ballots the cross in the circle does not appear in either ticket. However, the fact that it does appear in the two tickets does not

avoid the effect of the fact that the voter crossed to the Democratic ticket and marked his ballot for the candidate on that ticket.

As to the second classification covering six ballots upon which the name "Brown" is used instead of the name "W. A. Brown," we reach the conclusion that the ballots could not properly be counted for W. A. Brown. Had the name "W. A. Brown" appeared on the printed ballot, and a voter had written the name "Brown" in the Democratic ballot, the question would be closer. The argument that the publicity campaign mentioned above should be considered as determining the voter's intention, while, in our opinion, not tenable, is met by proof of the large number of Browns who live in the City of Hinton, and are eligible for the office of mayor, one of whom actually received a vote for that office.

While, as a general principle, we would prefer to discard these extraneous considerations, and rest our conclusion upon the principle that we cannot arbitrarily say that the name "Brown" was intended to mean "W. A. Brown," the relator in this case, there is precedent for considering the facts above alluded to. In the case of *Rollyson* v. *County Court, supra,* Prince E. Rollyson was a candidate for membership on the board of education of the independent school district of Hinton. It was shown that a large number of people wrote in the name "Rollyson," excluding his given name or initials. In that case the fact appeared that Prince E. Rollyson and his wife, Edith C. Rollyson, were the only persons by the name of Rollyson living within the independent school district, and on that state of facts this Court counted the ballots cast for Rollyson, and that action is strongly relied upon to sustain the proposition that the several votes cast for "Brown" in the case now before us should be counted for W. A. Brown; and particularly on the ground that it was generally known that he was an active candidate for the office of mayor. As indicated above, we do not think this position can be maintained, nor do we think that the case of *Rolly-*

*son* v. *County Court, supra,* based upon an entirely different state of facts, is authority for the proposition contended for here.

In the third classification, one ballot, the vote was cast for "W. A. Bro-"; and the fourth classification, consisting of one ballot voted for "W. H. Brown"; and the ballot included within the ninth classification cast for "Lawyer Brown," all come within the reasoning applied to the six ballots in the second classification, and should not have been counted for W. A. Brown.

In the fifth classification, one ballot, there is an "X" above the circle below the party emblem in the Democratic ticket, and in the Republican ticket the name "W. A. Brown" is written with an "X" in the box before his name. This ballot was not counted for either Carr or Brown. We think it should have been counted for W. A. Brown. The "X" in the Democratic ticket, if there had been no other mark on the ballot, would have indicated the voter's intention to vote a straight Democratic ticket; but when he crossed to the Republican side of the ballot; and legally marked his ballot for "W. A. Brown," as he had the right to do, that act amounted to a clear showing of his intent to vote for W. A. Brown.

The sixth classification, one ballot, is a ballot where there is an "X" to the left of the party emblem in the Democratic ticket, with no mark of any kind on the Republican ticket. This ballot was properly counted for P. J. Carr.

The seventh classification, one ballot, upon which there is a diagonal mark to the left of the box before the name of P. J. Carr, and no mark of any kind on the Republican ticket, was properly counted for Carr.

As to the eighth classification, one ballot, upon which there is an "X" in the box before the name of P. J. Carr on the Democratic ticket, but a clear indication that the voter attempted to erase the same by use of a pencil, apparently the same pencil with which he made the "X", and in the

Republican ticket the name "W. A. Brown" is written with an "X" in the box before his name, which does not show any sign of attempted erasure, we are of opinion that the voter, while he placed an "X" in the box before the name "Carr," made an effort to erase the same, and thus indicated his intention to vote for W. A. Brown. This ballot was not counted for either candidate, but, in our opinion, should have been counted for W. A. Brown.

The two ballots in the tenth classification, in which the name "W. A. Brown" was written in the Republican ticket, were properly counted for him. The unidentified ballot mentioned above was, according to relator's petition a ballot in which the word "Brown" was written, and should not have been counted for W. A. Brown.

The recount of the votes cast in the election of June 10, 1947, showing a majority of five in favor of P. J. Carr, and he having been declared elected mayor of the City of Hinton, as the result of such canvass of votes, and said recount, we would not be warranted in awarding the writ prayed for, unless, in our opinion, a sufficient number of ballots had been improperly counted or rejected to change the result of the election, declared as aforesaid. The conclusions we have reached on the several ballots considered, if carried into effect by a re-canvass, would not change the result so declared. As we have indicated, one ballot in the fifth classification and one ballot in the eighth classification, neither of which was counted for either candidate, should have been counted for Brown. This would add two votes to the total of W. A. Brown's votes, but would have no effect upon the vote the board of canvassers found had been received by P. J. Carr. Therefore, the result would not be changed, and Carr would still have a majority of three votes over W. A. Brown. For this reason, and for the reasons stated in our appraisal of the several ballots here considered, the peremptory writ of mandamus prayed for is denied, with costs to the respondents.

*Writ denied.*

Lovins, Judge, concurring:

Whether a ballot cast at an election otherwise legal shall be counted is to be determined by the intent of the voter as shown by the face of the ballot and, as stated in the opinion herein, in special instances extraneous facts may be considered in arriving at such intent. The authorities cited in the opinion herein and others which could be cited fully sustain this principle.

Applying that well established rule of law to the two ballots on which "W. A. Bro-" and "W. H. Brown" were written, those two ballots should be counted for relator. I think the voter clearly and undoubtedly intended to cast those two ballots for W. A. Brown. But if those ballots were to be counted, the result would not be changed and Carr would still have a majority of one vote. Therefore, I concur in the denial of the writ.