# CHARLESTON.

GOFF *v.* BOARD OF CANVASSERS.

Submitted December 28, 1904. Decided December 31, 1904.

1. ELECTION—*Mandamus—Practice—Supreme Court.*
   Upon a *mandamus* from this Court in election cases, the action of election officers may be reviewed and controlled to the

same extent as upon the statutory writ of *certiorari* in the circuit courts. (p. 677).

Petition of H. F. Goff for a writ of *mandamus* to the board of canvassers of Roane County.

*Writ Awarded.*

PENDLETON & BOGGESS, J. G. SCHILLING, J. M. HARPER, D. J. CHAMBERS, GEO. F. CUNNINGHAM, and MOLLOHAN, MC-CLINTIC & MATHEWS, for petitioners.

T. P. RYAN and C. E. HOGG, for respondent.

POFFENBARGER, PRESIDENT:

H. F. Goff asks a *mandamus* to compel the board of canvassers of Roane county to reject the ballots and certificate of the election held at precinct No. 3 of Geary District in said county in the election held in November last, for the reason that none of the said ballots have the signatures of the poll clerks properly affixed.

Goff and W. Bailey Young had been opposing candidates for the office of Sheriff of said county in said election, and a recount between them was in progress. Before said precinct was reached, the ballots were tampered with. Upon opening them it was found that not a single ballot had the signatures of both poll clerks on it, written in the handwriting of each. There were 184 ballots. On 169 of them both names were in the handwriting of the Republican clerk. On the remaining 15 ballots both names were in the handwriting of the Democratic clerk. Under these circumstances, the rule announced in *Stafford* v. *Board of Canvassers,* just decided, required the rejection of the ballots and the certificate of the precinct officers as to said precinct, and of the entire vote at said precinct. Instead of rejecting it, the board admitted evidence of commissioners and clerks to show that some ballots cast at said precinct had been properly signed. On this issue the evidence was conflicting and the board arrived at the conclusion that some legal ballots had been cast, and had been abstracted and others inserted in lieu of them, since the returns had been canvassed. Upon this finding, the result of the election at the precinct was declared from and according to the certificate of the precinct election officers, under the rule declared in *Staf-*

*ford* v. *Board*. It is not pretended that on the recount of said precinct a single valid ballot was before the Board. They sustained the certificate upon the theory that originally it had been ·founded upon valid ballots.

If no ballots at all appeared and there was evidence of tampering with the returns, there would be a presumption in favor ·of the certificate. The evidence of the commissioners and poll ·clerks as to the· identity of the papers, purporting to be returns, is admissible, and, if from such evidence it appears that the papers purporting to be the ballots used, are not the ballots actually used, and it further appears that the returns have been tampered with, there would be a presumption in favor of the validity of the certificate.

It is urged that the finding of the Board on the evidence as to the identity of these papers is not reviewable by this Court by *mandamus* because they say that would make the writ operate ·as a common law *certiorari*. We think, however, its scope is the same as the statutory *certiorari*.. *Mandamus* in election ·cases, as now exercised, is of recent institution. The statute was passed long after the scope of the writ of *certiorari* had been broadened. This Court having jurisdiction of *mandamus,* and it having, in election matters under the statute, the efficacy ·of a *certiorari* in a circuit court, we have the right to look to the statute giving the scope and effect of that writ. What else points the way? As the duties of election officers are almost wholly ministerial, no exercise of discretionary or quasi judicial power by them is binding on the courts having supervisory jurisdiction over them by *mandamus*.

Having carefully examined the evidence, we do not think the ·conclusion of the canvassers on the question of the identity of the ballots is sustained by it. The Republican poll clerk testified that it was his "recollection" that the first six or eight ballots cast had been properly signed. After examining all the ballots and finding none properly signed, he adhered to his former statement, but said he could not state positively that both ·clerks had signed some of the ballots. His evidence closed with this statement as to whether he might be mistaken: "It is possible that I might, but don't think I am." One of the Commissioners said "My recollection is that Mr. Osborn wrote his name and passed it to the other clerk, Mr. Pettit, but I didn't

see the writing. I can't say whether the names were written that way or not."

On cross-examination, he said: "I didn't see the names; I wasn't close enough to see." The Democratic poll clerk said: "Each of us signed each other's names." He had no recollection of any having been properly signed. Another Commissioner said, "To the best of my recollection Mr. Pettit wrote his name and Mr. Osborn's name on part of them, and the remainder Mr. Osborn wrote them himself."

From this it is apparent that the conclusion of the canvassers rests upon evidence of mere recollection, contrary to an admitted fact, namely, that one genuine signature is found upon every ballot. To sustain the finding, it must be said not only that ballots have been abstracted, but that one of the poll clerks signed both names on, and substituted, other ballots for those abstracted. There is not a scrap of evidence, circumstantial or other kind, indicating that either clerk had tampered with the ballots or that the signature of either had been counterfeited. The presence of these actual unimpeached signatures is a very strong circumstance in favor of the identity of the papers, and we conclude that the board erred in not giving the papers and signatures the evidential force to which they are entitled.

For the reasons aforesaid, a writ of *mandamus* is awarded, commanding the said Board of Canvassers to re-assemble and reject the entire vote at said precinct No. 3 of Geary District, and not count the same or any of it, and then declare the result of the said election in said county, between the said candidates.

*Writ Awarded.*