STATE *ex rel.* WILLIAM T. GEORGE, JR.

*v.*

GUIE LUTZ

(CC 731)

Submitted January 14, 1948.  Decided February 3, 1948.

*William T. George, Jr.,* for petitioner.

*Kittle & Kittle* and *George M. Kittle,* for respondent.

LOVINS, JUDGE:

The State of West Virginia at the relation of William T. George, Jr., Prosecuting Attorney of Barbour County, instituted this proceeding in *quo warranto* in the circuit

court of that county against Guie Lutz to test his right to the office of mayor of the City of Belington.

Relator filed a petition alleging that he was the duly elected, qualified and acting Prosecuting Attorney of Barbour County, and that cause existed for the issuance of a writ of *quo warranto* against defendant. The reason given therein for issuance of the writ is: That the Legislature of West Virginia enacted a statute incorporating the City of Belington in the County of Barbour, providing for a mayor of said city; and that, in accordance with the provisions of said statute, in order to be eligible for election to said office, a person, at the time of election to said office must be entitled to vote in a city election for member of the common council, must be assessed with taxes for the preceding year on real or personal property of the assessed value of five hundred dollars or more, and must have actually paid the taxes so assessed. The petition further alleges that defendant was elected mayor of the City of Belington on March 7, 1947; that he entered into that office on April 1, 1947; that an examination of the assessment records of Barbour County disclosed that defendant had not been assessed with property of the value of five hundred dollars or more; and that he had not actually paid taxes assessed to him on either real or personal property within the City of Belington of said assessed value. Because of such failure the petitioner alleges that defendant, being ineligible to the office of mayor of said city, had intruded into and usurped said office. The petition prayed that a writ of *quo warranto* be awarded and prosecuted in the name of the State of West Virginia against defendant to determine his right to occupy said office and exercise its duties.

The Judge of the Circuit Court of Barbour County, in vacation, signed and issued a writing which, omitting the title, testimonium clause, direction and signatures, reads as follows:

"Whereas a petition in the name of William T. George, Jr., Prosecuting Attorney for the County of Barbour, who petitions at the relation of him-

self, he being satisfied that a cause exists for a Writ of Quo Warranto herein, has been presented to the undersigned Judge of the Circuit Court for Barbour County, in vacation praying that a Writ of Quo Warranto be awarded against Guie Lutz, upon the grounds and for the causes set forth in said petition; and whereas in the opinion of the undersigned Judge of said Court, the reasons so stated in said petition are sufficient in law;

"Now, therefore, you are hereby commanded, in the name of the State of West Virginia, to summon Guie Lutz to appear before the Circuit Court for Barbour County, West Virginia, then in Regular Session at the Court House in the City of Philippi, Barbour County, West Virginia, at nine o'clock A. M., Eastern Standard Time on June 2nd, 1947, to show by what warrant or authority of law he is exercising, or attempting to exercise, the rights and privileges of Mayor of the City of Belington, a Corporation, Barbour County, West Virginia."

Defendant filed a paper which purported to answer the petition and the writing signed by the Judge. He alleges, in substance, that he was entitled to vote in the city election for members of the common council for the year 1946; that in the year 1945 he was assessed with taxes upon real and personal property of the value of five hundred dollars; that he paid the taxes so assessed; that he was duly elected to the office of mayor of the City of Belington on March 5, 1946, at a regular election; that he gave bond, as required by the charter of said city, and entered into the discharge of his office as mayor on the 1st day of April, 1946, and thenceforth had performed the duties thereof; that his term as mayor of the said City of Belington to which he was duly elected and for which he was eligible expired on the 31st day of March, 1947, but that under the provisions of the statute incorporating said city his term of office was prolonged until his successor was duly elected and qualified.

The answer of defendant further avers that on March 4, 1947, he was duly and legally reelected to the office of

mayor of said city; that he has executed the bond provided by law and has taken the oath of office of mayor of said city, but through inadvertence he was not assessed with taxes upon real or personal property within said city of the value of five hundred dollars for the year 1946, but was assessed with property therein of the value of two hundred fifty dollars. Nevertheless defendant avers that on January 1, 1946, he was possessed of property in the City of Belington of the value of more than five hundred dollars.

Defendant admits that he was ineligible to be reelected to the office of mayor on March 4, 1947, for the term commencing April 1, 1947, and that his election thereto was void. But having been duly elected and eligible to the office of mayor of said city on March 5, 1946, and no person having been elected as his successor, he contends that the term from April 1, 1946, to March 31, 1947, is prolonged and extended.

Relator demurred to the answer of respondent on the grounds that the answer is not responsive to the "petition" of relator, since it alleges matter foreign to said petition. The trial court sustained the demurrer and on the joint application of the parties certified that ruling to this Court.

The common law writ of *quo warranto* is an ancient writ, the origin of which is lost in antiquity. At common law it was "in the nature of a writ of right for the king, against him who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim in order to determine the right." II Chitty's Blackstone 201. An information in the nature of a writ of *quo warranto* also existed at common law. *Brooks* v. *State ex rel. Richards, Attorney General* (Del.), 79 A. 790, 797; *State* v. *Ashley,* 1 Ark. 279, 304. By a remedial statute enacted by Parliament in the ninth year of the reign of Queen Anne, the proceeding by information in the nature of *quo warranto* was regulated and defined. Originally, the information in the nature of a writ of *quo warranto* was a

criminal proceeding, but it has long since been characterized and treated as a civil remedy.

Proceedings in a writ of *quo warranto* at common law were cumbersome, the first process issued being a *venire facias* or subpoena. *People* v. *Richardson,* 4 Cowen 97. See note, *idem,* 109. If the defendant failed to appear in response to the process, a writ of *distringas* or attachment was next issued. *People* v. *Richardson, supra.*

The writ of *quo warranto,* as it existed at common law, is now practically obsolete, and it would serve no useful purpose to trace further the history of the writ and the processes through which it was enforced. It suffices to say that under modern practice the information in the nature of a writ of *quo warranto* has generally superseded the ancient common law writ.

The first statutory regulation of a proceeding by *quo warranto* was enacted as Chapters 73 and 109, Acts of the Legislature Adjourned Session, 1882, which, with immaterial changes, is now designated as Code, 53-2. Our statute is almost identical with a statute in force in the State of Virginia. Chapter 145, Code of Virginia, 1887. In the case of *Watkins* v. *Venable* (Va.), 39 S. E. 147, the Supreme Court of Appeals of Virginia held that the purpose of the statute in that jurisdiction was "to simplify the procedure in *quo warranto* cases, and to define the cases in which it might be used. It was not intended * * * to narrow the use of the writ, and make it less comprehensive in trying the title to an office than the common law proceedings of *quo warranto.*" In this case, however, it is unnecessary to say whether the common law writ of *quo warranto* has been abolished by Code, 53-2, since this proceeding was instituted under that statute.

By our statute, a writ of *quo warranto* lies against any person who intrudes into or usurps any public office. Code, 53-2-1. The writ is issued upon application made by petition to the court having jurisdiction, or the judge thereof in vacation, wherein the reason for issuance of such writ

is set forth. Code, 53-2-2. A petition filed under the provisions of Code, 53-2-2, does not of itself make defendant a party to the proceeding. *Watkins* v. *Venable, supra.*

An information in the nature of a writ of *quo warranto* may be used in any case wherein a writ of *quo warranto* will lie. Code, 53-2-4. But there is a distinction, under our statute, in the pleadings. After a writ of *quo warranto* is issued, the defendant may plead not guilty, demur to the writ, or both. Code, 53-2-6. But if the proceeding is by information in the nature of a writ of *quo warranto,* the defendant may answer the information, demur, or both. Code, 53-2-6.

The instant case is a proceeding by writ of *quo warranto* issued pursuant to Code, 53-2-3. Being restricted by statute to a plea of not guilty, demurrer, or both, to the writ, defendant's answer to the factual matters set forth in relator's petition was not responsive, and the ruling of the trial court on the demurrer was correct.

However, a demurrer reaches back to the first fault in the pleadings of either party. See *Doolittle* v. *County Court,* 28 W. Va. 158; and Burks' Pleading and Practice, Third Edition, Section 197. Application of this rule calls for consideration of the sufficiency of the writ as issued in this case.

No citation of authority is required for the proposition that a demurrer reaches only the defects in pleadings. Since our statute authorizes a demurrer to a writ of *quo warranto,* issued pursuant to Code, 53-2-3, it follows that such writ must be treated as a pleading as well as a process. The writ, being the only pleading at that stage of the proceeding, must contain factual averments which, if true, will justify the relief sought.

Furthermore, as stated above, defendant is restricted to a plea of not guilty, and such plea goes only to the writ. It follows, therefore, that the writ must contain sufficient factual averments so that defendant may join issue by a plea of not guilty.

The writ of *quo warranto* issued by the trial court in the instant case did not contain such factual averments. Accordingly, it was insufficient, in law, and the writ should be dismissed without prejudice.

We express no opinion on the merits of the questions attempted to be raised in this case.

The ruling of the Circuit Court of Barbour County on the demurrer is affirmed, and this case is remanded to that court with direction to dismiss the writ of *quo warranto* without prejudice to the issuance of a lawful writ, if relator is so advised.

*Ruling affirmed; cause remanded with direction to dismiss.*