STATE EX REL KEITH O. BUMGARDNER

*v.*

FRANK MILLS, *et al.*

(No. 10148)

Submitted March 15, 1949. Decided March 22, 1949.

582

*Johnson & Johnson* and *C. B. Johnson*, for petitioner.

· *J. Philip Clifford*, Prosecuting Attorney, *Maxwell & Young, Lloyd H. Young* and *J. C. McManaway*, for defendants.

HAYMOND, PRESIDENT:

On February 14, 1949, the petitioner, Keith O. Bumgardner, instituted in this Court this original proceeding in mandamus. The petition prayed that a writ issue to require the defendants, Frank Mills, E. George Smith, and Brent G. Rittenhouse, Commissioners of the County Court of Harrison County, and as such the board of canvassers of that county, to reconvene, set aside its order of December 30, 1948, entered upon a recount, by which the defendant, Fitzhugh Reynolds, was declared to be the duly elected Sheriff of Harrison County, and to enter an order declaring the petitioner to be the duly elected sheriff of that county, and for general relief. This Court awarded a rule returnable March 15, 1949. On that day, upon the petition, the separate demurrer of the defendant Rittenhouse, the demurrer and the answer of the defendants constituting the board of canvassers, the demurrer and the answer of the defendant, Fitzhugh Reynolds, the various exhibits and other papers filed with these pleadings, and the testimony of certain election officers introduced before the board of canvassers upon the recount, the proceeding was heard and submitted for decision. On March 22, 1949, by order entered on that day, this Court refused the writ and discharged the rule. This opinion is now filed for the purpose of stating and recording the reasons for that decision.

The petitioner, Keith O. Bumgardner, and the defendant, Fitzhugh Reynolds, were opposing candidates for the office of Sheriff of Harrison County at the general election held in that county on November 2, 1948. The petitioner was the candidate on the Republican ticket and the defendant Reynolds was the candidate on the Democratic ticket. The name of any other person as a candidate for that office did not appear on any ticket on the official ballot printed and used in that election. According to the canvass of the returns of the election, which was completed on November 13, 1948, the petitioner received 18,234 votes and the defendant Reynolds 18,222 votes, or a majority of twelve votes for the petitioner. Before a declaration of the result was made, Reynolds demanded and was granted a recount of the ballots in the manner provided by the statute. At the conclusion of the recount, which seems to have occurred on December 27, 1948, it appeared that the petitioner received 18,086 votes and that the defendant Reynolds received 18,130 votes, or a majority for Reynolds of forty four votes. These tabulations were recorded by order entered by the board of canvassers on December 30, 1948, which declared the defendant Reynolds to be the duly elected Sheriff of Harrison County. Having taken the oath of office, Reynolds entered upon the duties of sheriff on January 1, 1949, and he is now occupying that office. On January 8, 1949, the petitioner gave to Reynolds a notice in writing that he intended to contest his election as sheriff and the contest of such election is now pending in the County Court of Harrison County.

The petitioner complained of the action of the board of canvassers and sought a writ of mandamus on these specified grounds: (1) Three hundred and forty two ballots signed by a commissioner and a poll clerk, but not by both poll clerks, at Precinct No. 29 in Clark District, were not counted by the board of canvassers, which ballots, if counted, would have given the petitioner a majority of fifty eight votes at that precinct; (2) all ballots cast and counted at Precinct No. 12 in Clark District should not have been counted because the election at that precinct was illegally

and fraudulently conducted and destroyed the integrity of such ballots; (3) all ballots cast and counted at Precinct No. 68 in Coal District, of which the defendant Reynolds received, upon the canvass, a majority of seventy five votes and, upon the recount, a majority of seventy three votes, should not have been counted because one of the commissioners of election and one of the poll clerks who acted as such at that precinct were not qualified voters of the magisterial district in which such precinct is located; (4) nine ballots cast and counted for the defendant Reynolds at Precinct No. 52 in Clay District, indorsed with the signatures of the two poll clerks at such precinct, were not, in fact, signed by one of such poll clerks and, for that reason, should not have been counted; (5) nineteen designated ballots, three of them challenged, cast at various precincts, which should have been counted for the petitioner, were not counted; (6) numerous designated ballots, twenty two of them challenged, cast at various precincts, counted for the defendant Reynolds, should not have been counted; and (7) the failure of the defendant Reynolds to file, within thirty days after the election, a sworn statement of his financial transactions in connection with such election, rendered unlawful the declaration of his election by the board of canvassers and his attempt to qualify as sheriff.

The defendants, in opposing the issuance of the writ, asserted, in substance: (1) Inasmuch as the defendant, Reynolds, has assumed the office of sheriff, and now occupies that position, quo warranto, not mandamus, is the only appropriate remedy to determine his right to that office; (2) the petition undertakes to present matters involving fraud and illegality in the conduct of the election, the qualifications of election officials and voters, and the eligibility of the defendant Reynolds to qualify and serve as sheriff, which the board of canvassers can not consider or determine; and (3) the action of the board of canvassers in counting the ballots counted and in refusing to count the ballots not counted was correct.

A writ of quo warranto, or a writ in the nature of a writ of quo warranto, lies to try and determine the right or the title to a public office. *City of Roanoke v. Elliott,* 123 Va. 393, 96 S. E. 819. The writ will issue against any person who intrudes into or usurps a public office. *State ex rel. George v. Lutz,* 131 W. Va. 126, 46 S. E. 2d 245. By statute a proceeding in quo warranto may be instituted in the name of the State of West Virginia, in a proper case, only at the instance of the Attorney General of the State or the prosecuting attorney of any county. Code, 1931, 53-2-1. But also by statute, in any case in which a writ of quo warranto would lie, any person interested may, in the name of the State of West Virginia, apply to the proper court or judge in vacation for leave to file an information in the nature of a writ of quo warranto for any of the causes or against any of the persons mentioned in Code, 1931, 53-2-1. See Code, 1931, 53-2-4. The person applying for such leave, however, must be interested otherwise than as a citizen and a taxpayer. *State ex rel. Scanes v. Babb,* 124 W. Va. 428, 20 S. E. 2d 683; *State ex rel. Depue v. Matthews,* 44 W. Va. 372, 29 S. E. 994. Though the writ of quo warranto, or an information in the nature of a writ of quo warranto, lies in a proper proceeding to try the title to a public office, the existence of these remedies, being less convenient or effective than the remedy afforded by mandamus, will not bar a person from resort to a proceeding in mandamus to enforce his right to a public office when he shows, by a commission, certificate, or other proper evidence, a clear prima facie legal right to such office. *Kline v. McKelvey,* 57 W. Va. 29, 49 S. E. 896; *Hall v. Stepp,* 105 W. Va. 487, 143 S. E. 153; *State ex rel. Hall v. County Court of Gilmer County,* 87 W. Va. 437, 105 S. E. 693; *Griffith v. County Court of Mercer County,* 80 W. Va. 410, 92 S. E. 676; *Booten v. Pinson,* 77 W. Va. 412, 89 S. E. 985; L. R. A. 1917A, 1244; *Martin v. White,* 74 W. Va. 628, 82 S. E. 505; *Dew v. Judges of Sweet Springs,* 13 Va. 1, 3 Hen. & Mun. 1, 3 A.M. Dec. 639. See also *State ex rel. James v. James,* 73 W. Va. 753, 81 S. E. 550; *Schmulbach v. Speidel,* 50 W. Va. 553, 40 S. E. 424, 55 L. R. A. 922; *Bridges v. Shallcross,* 6 W. Va. 562, *Lewis v. Whittle,* 77 Va. 415. Moreover, the question pre-

sented in this proceeding does not primarily involve a dispute or a contest of the ordinary type between a claimant and a person who has intruded upon or usurped a public office, but instead the problem of determining, from the proper election returns which the board of canvassers is legally authorized to consider, which one of two opposing candidates for the office of sheriff has been duly elected to that office. In such case, both by statute, which now appears as Code, 1931, 3-5-41, and which " 'gives the writ of mandamus more scope than at common-law, rendering it a process to control them (the officers) as to all actions ministerial or judicial' ", *Sanders v. Board of Canvassers*, 79 W. Va. 303, 90 S. E. 865, and by numerous decisions of this Court, mandamus is the proper remedy to require a board of canvassers to perform the duties imposed upon it by law, one of which is to ascertain and declare the true result of an election. *State ex rel. Fanning v. Mercer County Court*, 129 W. Va. 584, 41 S. E. 2d 855; *State ex rel. Daugherty v. County Court of Lincoln County*, 127 W. Va. 35, 31 S. E. 2d 321; *State ex rel. Revercomb v. Sizemore*, 124 W. Va. 700, 22 S. E. 2d 296; *Marquis v. Thompson*, 109 W. Va. 504, 155 S. E. 462; *State ex rel. Simon v. Heatherly*, 96 W. Va. 685, 123 S. E. 795; *Pack v. Karnes*, 83 W. Va. 12, 97 S. E. 281; *Sanders v. Board of Canvassers*, 79 W. Va. 303, 90 S. E. 865; *Kirkpatrick v. Deegans*, 53 W. Va. 275, 44 S. E. 465; *Daniel v. Simms*, 49 W. Va. 554, 39 S. E. 690; *Dunlevy v. County Court of Marshall County*, 47 W. Va. 513, 35 S. E. 956. Whether the petitioner is entitled to the writ depends, of course, upon the sufficiency of his showing that he has a clear legal right, on the basis of the election returns, to the office to which he claims he has been elected, and requires consideration and examination, by this Court, of the action of the board of canvassers in counting and in refusing to count numerous ballots as disclosed by the election returns and as set forth and described in the petition.

Though, as just indicated, mandamus is the proper remedy by which the relief sought by the petitioner may be obtained, provided he shows a clear legal right to such

relief, the writ will not be awarded to compel the board of canvassers to perform an act which it is without lawful authority to perform or to consider and pass upon matters which by law it does not have the power to determine. The original jurisdiction of this Court in mandamus does not extend beyond its authority to command the board of canvassers to do that which it is required by law, but has refused, to do. *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772; *State ex rel. Matheny v. County Court of Wyoming County,* 47 W. Va. 672, 35 S. E. 959. See *Harrison v. Barksdale,* 127 Va. 180, 102 S. E. 789; *Town of Strasburg v. Winchester and Strasburg Railroad Company,* 94 Va. 647, 27·S. E. 493; *State ex rel. Ryan v. Miller,* 82 W. Va. 490, 96 S. E. 791; *Hall v. Staunton,* 55 W. Va. 684, 47 S. E. 265. Mandamus will not be awarded to require the person to whom it should be directed to perform an act which, by law, he is not required or empowered to perform.

The petition contains, among others, these charges: Illegal and fraudulent conduct in the election at Precinct No. 12 in Clark District, where the ballots counted by the board of canvassers showed a majority of eighty seven votes for the defendant Reynolds at that precinct; and irregularities at Precinct No. 68 in Coal District, consisting in the service of two election officers, one a poll clerk and the other a commissioner, who were not qualified voters of that magisterial district, at which precinct the ballots counted gave the defendant Reynolds a majority of seventy three votes upon the recount and which ballots the petitioner insisted should not have been counted. These charges are denied by the answers of the defendants.

It is obvious that none of the factual matters set forth in each of these two charges in the petition is shown by the election returns; that the charges relate to transactions which can only be established by extrinsic evidence; and that any inquiry with respect to these matters is entirely distinct from, and must necessarily extend beyond, the conditions disclosed by the election returns. The board of

canvassers is created by statute and it can do only that which the statute authorizes it to do. *Funkhouser v. Land-fried,* 124 W. Va. 654, 22 S. E. 2d 353; *Poteet v. County Commissioners,* 30 W. Va. 58, 3 S. E. 97; *Brazie v. Fayette County Commissioners,* 25 W. Va. 213. The statute, to the extent here pertinent, provides: "The commissioners of the county court shall be ex officio a board of canvassers, and, as such, shall keep in a well-bound book, marked 'election record,' a complete record of all their proceedings in ascertaining and declaring the result of every election in their respective counties. They shall convene as such canvassing board at the courthouse on the fifth day (Sundays excepted) after every election held in their county, or in any district thereof, and the officers in whose custody the ballots, poll books, tally sheets and certificates have been placed shall lay the same before them for examination. They may, if deemed necessary, require the attendance of any of the commissioners, poll clerks or other persons present at the election, to appear and testify respecting the same, and make such other orders as shall seem proper, to procure correct returns and ascertain the true result of the election in their county; * * *. All orders made shall be entered upon the record. * * *. The board, before proceeding to canvass the returns of the election, shall open each sealed package of ballots so laid before them, and, without unfolding them, count the number in each package and enter the same upon their record. The ballots shall then be again sealed up carefully in a new envelope, and each member of the board shall write his name across the place where such envelope is sealed. After canvassing the returns of the election, the board shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots, and recount the same; * * *." Code, 1931, 3-5-33, as amended by Section 33, Article 5, Chapter 61, Acts of the Legislature, 1945, Regular Session.

It is clear from the provisions of the foregoing section and the provisions of Code, 1931, 3-5-34, that the primary

duty of the board of canvassers is to ascertain and declare the true result of the election in the county according to the election returns. *Sanders v. Board of Canvassers,* 79 W. Va. 303, 90 S. E. 865; *State ex rel. Gabbert v. Robinson,* 88 W. Va. 708, 107 S. E. 763; *State ex rel. Sizemore v. Hunter,* 86 W. Va. 544, 103 S. E. 678. On this point this Court said in *State ex rel. Hatfield v. Farley,* 97 W .Va. 695, 126 S. E. 413: "The duty of the Board of Canvassers is to canvass the returns of the election and accurately ascertain the result thereof from said returns, and in doing so, the Board is required first to ascertain whether or not the returns placed before them are, in fact, the returns of the said election, and that they are in proper form, and if not in proper form, to have them corrected so as to conform to the requirements of the law. They have the right to have the officers of the election and others summoned before them for these purposes and these purposes alone." In *Brown v. Randolph County Court,* 45 W. Va. 827; 32 S. E. 165, the opinion contains this language: "The board of canvassers is merely a body to canvass the returns of elections for public officers, acting simply on the certificates sent from voting precincts by certain officers holding the election, and recounting ballots when demand is made. They may send for those precinct officers to ascertain the true result; * * *." Code, 1931, 3-5-34, provides that the board of canvassers, under the regulations prescribed in the next preceding section, Code, 1931, 3-5-33, as amended by Section 33, Article 5, Chapter 61, Acts of the Legislature, 1945, Regular Session, portions of which are quoted in the preceding paragraph of this opinion, shall carefully and impartially ascertain the result of the election and record the result in the form set out in Section 34. This provision of the statute confines and limits the board to the mode prescribed and the powers conferred by Section 33, and as that section gives the board no authority so to do, it can not go behind or beyond the election returns. *State ex rel. Daugherty v. County Court of Lincoln County,* 127 W. Va. 35, 31 S. E. 2d 321; *Brawley v. The County Court of Kanawha County,* 117 W. Va. 691, 187 S. E. 417, 106 A. L. R. 924; *Hatfield v. Board of Can-*

*vassers of Mingo County*, 98 W. Va. 41, 126 S. E. 708; *Brazie v. Fayette County Commissioners*, 25 W. Va. 213.

This Court has also said that a board of canvassers, upon a canvass of election returns or a recount of election ballots, is without authority to hear and determine questions of fraud, illegality, or intimidation in an election. *Reynolds v. Board of Canvassers of Harrison County*, 117 W. Va. 770, 188 S. E. 229; *Hatfield v. Board of Canvassers of Mingo County*, 98 W. Va. 41, 126 S. E. 708; *State ex rel. Hatfield v. Farley*, 97 W. Va. 695, 126 S. E. 413; *State ex rel. Mahan v. Board of Canvassers*, 97 W. Va. 670, 125 S. E. 810; *Sanders v. Board of Canvassers*, 79 W. Va. 303, 90 S. E. 865; the eligibilty of a candidate, *State ex rel. Phillips v. Heatherly*, 102 W. Va. 116, 134 S. E. 594; *Varney v. County Court of Mingo County*, 102 W. Va. 325, 135 S. E. 179; the validity of the appointment, or the qualifications, of precinct election officers, *State ex rel. Revercomb v. Sizemore*, 124 W. Va. 700, 22 S. E. 2d 296; or irregularities discoverable in the course of a recount which can be established only by evidence which is extrinsic to the election returns, *State ex rel, Daugherty v. County Court of Lincoln County*, 127 W. Va. 35, 31 S. E. 2d 321; *Brawley v. The County Court of Kanawha County*, 117 W. Va. 691, 187 S. E. 417, 106 A. L. R. 924; *State ex rel. Vandelinde v. McComas*, 97 W. Va. 664, 125 S. E. 816. The fraud, the illegality and the irregularities in the appointment and the qualifications of election officers, alleged in the petition, involve inquiry or investigation which goes behind or extends beyond the election returns. The board of canvassers, being without authority to act in that manner or to hear and determine any matters of that nature, is neither required nor authorized to perform any duty of that character. In consequence, the writ of mandamus, the function of which is to compel the performance of a duty imposed by law upon an officer who refuses to discharge it, will not issue to compel the board to consider and determine any of these matters. Each of them is properly cognizable only in an election contest. *State ex rel. Mahan v. Board of Canvassers*, 97 W. Va. 670, 125 S. E. 810; *State ex rel. Hatfield v. Farley*, 97

W. Va. 695, 126 S. E. 413; *Reynolds v. Board of Canvassers of Harrison County*, 117 W. Va. 770, 188 S. E. 229; *Sanders v. Board of Canvassers*, 79 W. Va. 303, 90 S. E. 865; *Brown v. Randolph County Court*, 45 W. Va. 827, 32 S. E. 165; *Brazie v. Fayette County Commissioners*, 25 W. Va. 213; Code, 1931, 3-9-1. The law contemplates that the proceedings of the board of canvassers and an election contest shall be entirely separate and distinct. The former must end before the latter may begin; and the conversion of a canvass or a recount into a contest, even if attempted by the parties affected, should not be permitted. *Reynolds v. Board of Canvassers of Harrison County*, 117 W. Va. 770, 188 S. E. 229.

In connection with the charge of illegality and fraud in the election at Precinct No. 12 in Clark District the petition contains an allegation that the integrity of the ballots there cast and counted was destroyed by the illegal and fraudulent manner in which the election was conducted at that precinct. This allegation is denied by the answers of the defendants, the board of canvassers and Reynolds, and is not supported by any proof. If ballots have the appearance of having been tampered with, a board of canvassers can not consider evidence to show that they have not been altered, or to show the contents of the ballots, or to repel the presumption that they have been tampered with which arises from the appearance of such ballots. *Stafford v. Sheppard*, 57 W. Va. 84, 50 S. E. 1016. When upon a recount it appears from an examination of the ballots and the testimony of election officers that a great number of ballots from a particular precinct have been changed in favor of the same candidate after the canvass of the vote by the election officers, even though the evidence of opportunity to tamper with the ballots be slight, all the ballots at such precinct should be rejected and the result of the election at that precinct ascertained from the certificates of the election officers. *State ex rel. Mullens v. Board of Canvassers of McDowell County*, 102 W. Va. 267, 134 S. E. 597. See also *State ex rel. Daugherty v. County Court of Lincoln County*, 127 W. Va. 35, 31 S. E. 2d 321.

In *State ex rel. Gabbert v. Robinson,* 88 W. Va. 708, 107 S. E. 763, this Court said: "Nor do we think it is competent for the board of canvassers to enter upon an inquiry as to whether or not the ballots were actually tampered with by the party in whose custody they were, or by anyone else, during the time they were unsealed. Under the law they are the primary evidence of the result of the election only when they have been preserved in the manner provided by law, and when it appears that they have not been so preserved they lose their character as such evidence before the board of canvassers. The only thing the board of canvassers have to ascertain is whether the ballots were preserved in the manner required by law, and if they were then they are primary evidence. If they were not they cannot be considered by the board of canvassers. To allow that board to enter upon an inquiry as to the probable effect upon the result of the election from the ballots not being properly preserved would broaden their functions far beyond what was within the contemplation of the legislative authorities. It would be to permit them to make an inquiry which, if it can be made at all, would be within the province of a tribunal sitting to try a contest, as stated by Judge BRANNON in the case of *Stafford v. Sheppard, supra.* As to whether or not, before a proper tribunal trying a contest of the election, evidence can be introduced and heard for the purpose of restoring the ballots to their dignity as primary evidence, we express no opinion at this time, as the question does not arise upon this inquiry. The duty of boards of canvassers extends no further than to interpret the proper returns placed before them. *State ex rel. Sizemore v. Hunter,* 86 W. Va. 544, 103 S.E. 678. Such returns as come to them with proper evidence of their authenticity they must consider and interpret. Returns delivered to them which have not been properly preserved in the manner required by law, they must refuse to consider." As there is no showing that the ballots at Precinct No. 12 in Clark District had the appearance of having been altered or tampered with or that they were not preserved in the manner required by law, the action of the board of canvassers in counting them, which amounted to

a determination of their validity, will not be disturbed in this proceeding. *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772.

The petition also charges that the defendant Reynolds failed to file, within thirty days after the election, the detailed itemized verified statement of financial transactions in connection with such election which he was required to file by the provisions of Code, 1931, 3-8-6, and 3-8-8, and that, because of such failure, the action of the board of canvassers in issuing to him a certificate of the result of the election was unlawful and of no effect. Those charges are not sufficient in law. A board of canvassers has no authority to determine the eligibility of a candidate and the failure of a candidate who receives the highest number of votes in an election to file such statement does not relieve the board of its plain statutory duty to issue to him a certificate of the result of the election. Code, 1931, 3-5-34; *Varney v. County Court of Mingo County,* 102 W. Va. 325, 135 S. E. 179; *England v. Board of Canvassers of Raleigh County,* 102 W. Va. 696, 136 S. E. 266. The pleadings show that the required statement of the financial transactions of the defendant Reynolds, though not filed within thirty days after the election, was filed on December 29, 1948, and before the issuance to him of a certificate of the result of the election. This Court has held that prior statutory provisions, the substance of which is now contained in Sections 6 and 8, Article 8, Chapter 3, Code, 1931, although exacting promptness in the preparation and the delivery of the expense account of every candidate for public office, manifest "no express or implied determination to disqualify permanently one who is tardy in that respect from discharging the functions and receiving the emoluments of the office to which he has been elected, but only until he has filed the required statements." *State ex rel. Hall v. County Court of Gilmer County,* 87 W. Va. 437, 105 S. E. 693; *State ex rel. Harmon v. Board of Canvassers,* 87 W. Va. 472, 105 S. E. 695.

In addition to the matters already referred to, the petition contains allegations which set forth and relate to the action of the board of canvassers in counting and in refusing to count numerous designated ballots. These allegations assail as erroneous the action of the board: (1) in refusing to count three hundred and forty two ballots cast at Precinct No. 29 in Clark District which were not personally signed by each of the two poll clerks but instead were signed by one poll clerk and one commissioner of election and which, if counted, would result in a majority of fifty eight votes for the petitioner at that precinct; (2) in refusing to count for the petitioner three ballots of challenged voters cast at two different precincts, one at Precinct No. 126 in Simpson District and the other two at Precinct No. 103 in Eagle District; and in counting for the defendant Reynolds twenty two ballots of challenged voters cast in these numbers at these precincts: one at Precinct No. 20 in Clark District; three at Precinct No. 33 in Clark District; three at Precinct No. 49 in Clay District; one at Precinct No. 70 in Coal District; eleven at Precinct No. 96 in Eagle District; two at Precinct No. 106 in Grant District; and one at Precinct No. 123 in Simpson District; (3) in counting for the defendant Reynolds forty three ballots cast in these numbers at these precincts: nine ballots at Precinct No. 52 in Clay District; one ballot at Precinct No. 49 in Clay District; one ballot at Precinct No. 63 in Coal District; twenty nine ballots at Precinct No. 80 in Coal District; all of which bear the signatures of each of the two poll clerks at each precinct but which, the petition charged, were not in fact personally signed by one of such poll clerks; and three ballots at Precinct No. 72 in Coal District which bear the signatures of each of the two poll clerks but which, the petition charged, were signed as to one of such poll clerks by a person who was, in fact, not a poll clerk at that precinct; (4) in refusing to count for the petitioner sixteen ballots cast at various precincts because of the manner in which each of such ballots was marked by the voter; and (5) in counting for the defendant Reynolds two hundred and eleven ballots cast at various precincts because of the manner in which each of such ballots

was marked by the voter. All these allegations were expressly denied by the answers of the defendants the board of canvassers and Reynolds.

As the matters mentioned in the preceding paragraph are disclosed by, and appear upon the face of, the election returns, are within the scope of the statutory power and authority conferred upon the board of canvassers, and involve the performance of duties imposed upon it by statute to procure correct returns, and to ascertain and declare the result, of the election, its action in the discharge of its duties in that respect is subject to consideration and examination by this Court in a proceeding in mandamus.

At an election the poll clerks shall write their names at the place designated on the back of an official ballot called for by a voter and deliver the ballot to the voter. Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943, Regular Session. Each poll clerk shall personally sign his name on the back of the ballot before delivering it to the voter, and no commissioner of election shall deposit in the ballot box any ballot upon which the names of the poll clerks do not appear. Code, 1931, 3-5-18. Any ballot which is not so indorsed with the names of the poll clerks shall be void and shall not be counted. Code, 1931, 3-5-31. These statutory provisions relate to the poll clerks at each precinct at which a single election board conducts an election and to the poll clerks of the receiving board at each precinct at which double election boards are appointed and act pursuant to the provisions of Code, 1931, 3-5-9, as amended by Section 9, Article 5, Chapter 59, Acts of the Legislature, 1945, Regular Session, and Code, 1931, 3-5-17. See *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772. The purpose of the Legislature in enacting these provisions of the statutes was to guard against and prevent fraud in an election. This Court has held, in numerous cases, that these statutory provisions are mandatory and that ballots which are not signed by the poll clerks, in the manner required by the statute, are void and can not be counted. *Funkhouser v. Brotherton,* 124 W. Va. 713, 22

S. E. 2d 284; *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772; *Hallanan v. Hager,* 102 W. Va. 689, 136 S. E. 263; *State ex rel. Hatfield v. Farley,* 97 W. Va. 695, 126 S. E. 413; *State ex rel. Simon v. Heatherly,* 96 W. Va. 685, 123 S. E. 795; *Senter v. Board of Canvassers,* 64 W. Va. 499, 63 S. E. 284; *Stafford v. Sheppard,* 57 W. Va. 84, 50 S. E. 1016; *Goff v. Board of Canvassers,* 56 W. Va. 675, 49 S. E. 588; *Kirkpatrick v. Deegans,* 53 W. Va. 275, 44 S. E. 465. This Court has held, however, in *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708, that the foregoing mandatory provisions of the general election laws do not apply to the ballot of an absent voter, dealt with by statute deemed supplementary and amendatory of existing laws relating to the manner and the method of voting; that the provision of the absent voter's statute, Section 110, Chapter 3, Code of 1923, now Section 10, Article 6, Chapter 44, Acts of the Legislature, 1941, Regular Session, that the poll clerks shall write their names on the back of the ballot of an absent voter, is directory; and that the ballot of such voter which bears the seal of the circuit clerk as required by Section 105, Chapter 3, Code of 1923, which section as amended is now incorporated in Code, 1931, 3-6-5, the requirement of Section 105 having been complied with in the *Hatfield* case, should be counted. It should also be observed that a separate statutory provision deals with ballots of challenged voters and declares that such ballots be not indorsed by the poll clerks, Section 25a, Article 5, Chapter 44, Acts of the Legislature, 1941, Regular Session; and, by virtue of this provision, such ballots should not be so indorsed. It is not disputed, and the three hundred and forty two ballots in question and the testimony of the precinct election officers show, that all of them were signed by a commissioner of election and by one of the poll clerks instead of by each of the two poll clerks. None of them was indorsed in the manner required by the applicable provisions of the statutes and the action of the board of canvassers in rejecting all of them was clearly right.

Section 31a, Article 5, Chapter 44, Acts of the Legislature, 1941, Regular Session, provides that the county court shall, on its own motion, at the time of the canvassing of the election returns, sit in session to determine the validity of ballots which have been challenged, and that, if it shall determine that the challenges are unfounded, the ballot of each challenged voter, otherwise valid, shall be counted and tallied together with the regular ballots cast in the election. Properly interpreted and applied this section imposes this duty not upon the county court as such but upon the county court while sitting and performing its statutory duties as a board of canvassers, and requires such board of canvassers to pass upon the validity of ballots of challenged voters. *State ex rel. Wilhide v. King,* 126 W. Va. 785, 30 S. E. 2d 234. See *Poteet v. County Commissioners,* 30 W. Va. 58, 3 S. E. 97. The pleadings in this proceeding indicate that the challenges taken to the three ballots voted for the petitioner were well founded and that the challenges taken to the twenty two ballots voted for the defendant Reynolds were not well founded. No evidence to the contrary was taken or introduced as to any of these ballots of challenged voters. The findings of fact by a board of canvassers, based upon its inspection of the election returns, which include the ballots of challenged voters, and upon consideration of proper evidence introduced before the board, will not be disturbed by this Court in a proceeding in mandamus unless such finding is against the weight of the evidence or is in contradiction of the election returns. *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708. In the absence of evidence to the contrary, or any contradiction of the election returns, the findings of the board with respect to the ballots of challenged voters and its action, in refusing to count the three ballots voted for the petitioner and in ing the twenty two ballots voted for the defendant Reynolds, can not be interfered with by this Court in this proceeding.

Similar disposition must be made of the charges of the petitioner in relation to the forty three ballots, forty of

which he contended were not signed by one of the two poll clerks and three of which he contended were signed by a person who was not a poll clerk. All these ballots on their face bear the signatures of each of the two poll clerks and the petitioner introduced no evidence before the board to establish or explain any error which might have existed or to show that any of the signatures was not genuine or that any of the persons who acted and signed the ballots as a poll clerk was not in fact such clerk. Evidence of the election officers or other persons present at the election to enable the board to procure correct election returns, if such evidence existed to contradict the situation disclosed by the returns, would have been proper and admissible for that purpose, Code, 1931, 3-5-33, as amended by Section 33, Article 5, Chapter 61, Acts of the Legislature, 1945, Regular Session; *State ex rel. Johnson v. Given*, 102 W. Va. 703, 136 S. E. 772; but no such evidence was offered or produced.

The only evidence introduced before the board of canvassers related to the three ballots at Precinct No. 72 in Coal District, which the petitioner contended were signed by a person who was not a poll clerk. Contrary to this contention, the evidence of the only two election officers at that precinct who testified shows beyond question that the person who indorsed her name on each of the three ballots was originally sworn and acted as a poll clerk at or shortly after the opening of the polls and, after signing these three ballots, ceased to act and left the polls and another poll clerk, as to whose subsequent actions no objection is advanced, was sworn and acted in the place of the person who first served in that position. The sole effort made to contradict the showing of the returns as to any of these ballots consisted in the filing of two affidavits to the effect that nine ballots cast at Precinct No. 52 in Clay District, which bear the signatures of the two poll clerks, were signed, as to one of such clerks, in his name by one of the election commissioners at that precinct. The affidavits filed in this proceeding can not be considered here in the first instance as evidence on that question. This evidence

should have been presented to and considered by the board. *State ex rel. Johnson v. Given,* 102 W.Va. 703, 136 S. E. 772. "There is always a presumption that official acts or duties have been properly performed, and in general it is to be presumed that everything done by an officer in connection with the performance of an official act in line of his duty was legally done, * * *." 22 C. J. 130. In *Loomis v. Jackson,* 6 W. Va. 613, a special court, created and authorized by the Legislature to hear and determine certain types of election contests, recognized the presumption that all officers and other persons engaged in conducting elections or in making returns and certifying results acted in accordance with the law until the contrary is shown. See also *Halstead v. Rader,* 27 W. Va. 806, in which this Court said: "Whatever is done by persons exercising a legal authority * * * is presumed to be done rightly." The burden of overcoming this presumption of the regularity of all these ballots as indicated by the face of the election returns was upon the petitioner, 22 C. J. 135; *State ex rel. Lambert v.* Board of Canvassers of Nicholas County, 106 W. Va. 544, 146 S. E. 378; *Dunlevy v. County Court of Marshall County,* 47 W. Va. 513, 35 S. E. 956; and he has not carried that burden. The board of canvassers, by its action in recognizing the validity of the forty three ballots and in counting them for the defendant Reynolds, necessarily found that the signatures of the poll clerks were genuine and that the persons who made them were the poll clerks and acted in that capacity. In the absence of evidence to the contrary this finding can not be disturbed in this proceeding. *Lucas v. Board of Canvassers of Lincoln County,* 116 W. Va. 427, 181 S. E. 77; *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772; *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708.

Code, 1931, 3-5-19, as amended and reenacted by Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943, Regular Session, prescribes certain rules to be observed by the voter in marking his ballot, and provides that no ballot shall be rejected for any technical error which does not make it impossible to determine the choice of the voter. These rules are not mandatory but directory and the meth-

ods provided for marking a ballot are not exclusive. Failure to comply strictly with such rules or to follow exactly these methods will not necessarily render a ballot invalid if the intention of the voter can be determined by inspection of the ballot as marked by the voter. *State ex rel. Lambert v. Board of Canvassers of Nicholas County,* 106 W. Va. 544, 146 S. E. 378; *State ex rel. Johnson v. Given,* 102 W. Va. 703, 136 S. E. 772; *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708. The provisions of the foregoing statute allow great liberality in the interpretation of election ballots and the statute mandatorily requires ballots to be counted whenever it is possible to ascertain the intention of the voter. *Shore v. Board of Canvassers,* 64 W. Va. 705, 63 S. E. 389. In every instance, the intention of the voter, when ascertainable, is the guiding star in determining for whom a ballot shall be counted. *State ex rel. McKown v. Board of Canvassers of Berkeley County,* 113 W. Va. 498, 168 S. E. 793; *Brown v. Carr,* 130 W. Va. 455, 43 S. E. 2d 401; *Chapman v. County Court of Doddridge County,* 113 W. Va. 366, 168 S. E. 141.

Six of the sixteen ballots not counted by the board, but which the petitioner insisted should have been counted for him, showed that the voter in each instance made a mark in the circle at the head of the Republican ticket and a like mark in the circle at the head of the Progressive ticket. There were three tickets, columns, or ballots on each of the ballot sheets, but the name of no candidate for sheriff appeared on the Progressive ticket. These six ballots were erroneously rejected. They should have been counted for the petitioner. The intention of the voter was to vote for the candidate for sheriff whose name appeared on the Republican ticket when the name of no candidate for that office appeared on the Progressive ticket. *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708. One of two other ballots showed marks in the squares opposite the place for the candidate for sheriff on both the Republican and the Progressive tickets, with the name of no candidate for that office on the Progressive

ticket, and the other of these two ballots showed a mark in the circle at the head of the Republican ticket and a mark in the square opposite the space provided for a candidate for sheriff on the Progressive ticket. These two ballots should have been counted for the petitioner.

Two ballots contained a mark in the section of the ticket designated "Republican Ticket", with no other marks on the ticket. They should have been counted for the petitioner. Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943, Regular Session. Another ballot disclosed vertical lines drawn through both the Democratic and the Progressive tickets and a mark in the middle of the name of Thomas E. Dewey at the head of the Republican ticket. It should have been counted for the petitioner. *Hatfield v. Board of Canvassers of Mingo County*, 98 W. Va. 41, 126 S. E. 708. Another ballot showed individual marks in the circle at the head of the Republican ticket, before the names of Dewey and Warren, and before the names of various candidates on the Republican and the Democratic tickets, but no mark before the name of either the petitioner or the defendant Reynolds. The marks in the circle at the head of the ticket indicate that the voter intended to vote for all candidates on that ticket except those on the Democratic ticket before whose names marks were made. The other marks for candidates on the Republican ticket were not necessary. The ballot should have been counted for the petitioner.

On another ballot the voter struck out the Democratic ticket and the Progressive ticket and made no marks on the Republican ticket. Under paragraph 3, Subsection a, Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943, Regular Session, this is a straight Republican ballot and it should have been counted for the petitioner. Another ballot contained individual marks in the circle at the head of the Republican ticket and before the names of the petitioner and the defendant Reynolds. No other mark appeared on the ballot and the mark opposite the name of the defendant Reynolds was scratched out. The

intent of the voter was to vote a straight Republican ticket and this ballot should have been counted for the petitioner. On another ballot the voter put a mark in the circle at the head of the Democratic ticket and a mark in the square before the name of the petitioner but this mark extended into the space of the candidate on the Republican ticket immediately above the space in which the name of the petitioner appeared. The voter intended to vote a straight Democratic ballot for all candidates on that ticket except the defendant Reynolds and to vote for the petitioner and this ballot should have been counted for him.

The final ballot to be considered in this group of sixteen showed that the voter struck out the name of the defendant Reynolds on the Democratic ticket and drew a horizontal line through the name of the petitioner, which line extended into the square before his name on the Republican ticket. These are the only markings on the ballot and indicate that the voter did not intend to vote for the candidate for sheriff on either ticket. The action of the board in refusing to count this ballot for either candidate was correct. A proper count of the fifteen valid ballots in this group of sixteen would result in a gain of fifteen votes by the petitioner.

In the group of two hundred and eleven remaining questioned ballots, which were counted for the defendant Reynolds by the board of canvassers and of which the petitioner complained, are seventeen ballots on each of which the voter marked an "X" in the circle at the head of the Democratic ticket and drew vertical lines through the names of all the candidates on that ticket, but made no other marks on any of the tickets. The voter did not scratch or mark out the names of the Democratic candidates but merely drew vertical lines through them. By placing the mark in the circle at the head of the Democratic ticket he indicated clearly his intention to vote a straight Democratic ballot, and it can not be said that by making the vertical lines on that ticket he indicated any change in that intention. He may have thought that the lines were neces-

sary as a further indication of the intention disclosed by the "X" in the circle. It is clear that he did not intend to vote any ticket other than the Democratic ticket. He should not be deprived of his right of suffrage unless his intention can not be ascertained and the statute expressly forbids the rejection of his ballot because of any technical error which does not make it impossible to determine the choice of the voter. The "X" in the circle makes clear his intention to vote a straight Democratic ballot and no clear or positive change in that intention is shown by his use of the vertical marks which were unnecessary to give effect to that intention or to complete his ballot, and they amount, at most, to surplusage which should be ignored. Interpretation of his act in drawing the vertical lines with the "X" remaining or subsequently placed, in the circle, whichever first occurred, as an indication that he intended to destroy his ballot and, in that manner, deprive himself of his right of suffrage would plainly not be reasonable and should not be adopted. On the contrary, the presence of the vertical lines on the ballot clearly appears to be a technical error of the nature mentioned in the statute, Section 19, Article 5, Chapter 51, Acts of the Legislature, 1943, Regular Session, which can not justify its rejection. *Chapman v. County Court of Doddridge County*, 113 W. Va. 366, 168 S. E. 141. See also *State ex rel. Lambert v. Board of Canvassers of Nicholas County*, 106 W. Va. 544, 146 S. E. 378; *Hatfield v. Board of Canvassers of Mingo County*, 98 W. Va. 41, 126 S. E. 708; *Phillips v. Board of Canvassers*, 64 W. Va. 715, 63 S. E. 392; *Shore v. Board of Canvassers*, 64 W. Va. 705, 63 S. E. 389; *Doll v. Bender*, 55 W. Va. 404, 47 S. E. 293; *Dunlevy v. County Court of Marshall County*, 47 W. Va. 513, 35 S. E. 956. It follows that the action of the board in counting these ballots for the defendant Reynolds gave recognition to the intention of the voter and was correct and proper.

One hundred and sixty four ballots cast at Precinct No. 91 in Eagle District, in the group of two hundred and eleven disputed ballots, contained check marks after the names of the various candidates, which marks are in addi-

tion to those made by the voter on each of these ballots. These marks were apparently made by election officers in checking or tabulating the votes after these ballots were cast. It is manifest that none of these marks conflicts with or obscures in any way the evident intention of the voter as indicated by the marks made by him, or discredits or destroys the integrity of these ballots, or in any degree affects their validity. Even if these ballots may be regarded as defaced to the extent of the appearance of the check marks, those marks were made, not by the voter, but by some other person or persons whose acts can not adversely affect his right of franchise. A ballot which the voter himself defaced to the extent of cutting the names of four candidates from it with a pen knife was recognized by this Court as good as to the remainder of the ballot. *Doll v. Bender*, 55 W. Va. 404, 47 S. E. 293. No question was raised as to the clear intention of the voter of each of these ballots to vote for the defendant Reynolds, and all of them were properly so counted.

The remaining thirty ballots in the group of two hundred and eleven ballots consist of individual ballots cast at various election precincts. As to twelve of these ballots, the separate marks on the particular ballots were: a circle around the Democratic emblem which connected with the circle at the head of the ticket; an "X" over the Democratic emblem; an "X" at the head of the Democratic ticket but not in the circle; an "X" above the top of the symbol of the Democratic Party; an "X" above the tail of the emblem at the head of the Democratic ticket; an "X" in the square at the head of the Democratic ticket but not in the circle; an "X" in that portion at the head of the Democratic ticket where the circle is printed but not in the circle; a small "X" outside the circle at the head of the Democratic ticket; an "X" in the circle at the head of the Democratic ticket which was stricken and an "X" in front of each of the names of Truman and Barkley; an "X" opposite the name of Truman and an "X" opposite the name of the defendant Reynolds and various other Democratic candidates; the word "Democrat" across the square which

contains the circle at the head of the Democratic ticket; and an "X" under the Democratic ticket designated "Democratic Ticket", a small "X" in front of the name of the defendant Reynolds and a similar mark in front of each of the names of several other Democratic candidates. The intention of the voter of each of these ballots was to vote either a straight Democratic ticket or for the defendant Reynolds and these ballots were correctly counted for him. *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708.

As to five other ballots, these separate marks on the particular ballots were: an "X" in the circle at the head of the Democratic ticket and several marks, but no "X", in the circle at the head of the Republican ticket; an "X" in the circle at the head of the Democratic ticket and a series of black marks, but no "X", in the circle at the head of the Republican ticket; an "X" in the circle at the head of the Democratic ticket and a mark, but no "X", in the circle at the head of the Republican ticket; an "X" in the circle at the head of the Democratic ticket and a horizontal line, but no "X", in the circle at the head of the Republican ticket; and an "X" in the circle at the head of the Democratic ticket and a line, but no "X", across the circle at the head of the Republican ticket. The intention of each of these voters was to vote a straight Democratic ticket. *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708. These ballots were properly counted for the defendant Reynolds.

Three other ballots in the group of thirty respectively contained these marks on the particular ballot: an "X" opposite the name of each of the presidential electors on the Democratic ticket, a check mark in front of the name of the defendant Reynolds and a similar mark in front of the names of some other candidates on both the Democratic ticket and the Republican ticket; a check mark in front of each name of some of the Democratic candidates and an "X" in front of the name of the defendant Reynolds and of each of several other candidates; and an "X" in

the circle at the head of the Republican ticket and an "X" in the square in front of the name of the defendant Reynolds and of every other Democratic candidate. These particular marks in front of the name of the defendant Reynolds on these three ballots indicate that each of these voters intended to cast his ballot for him and they were properly so counted.

Two other ballots respectively disclosed these marks: an "X" in the circle at the head of the Democratic ticket and an "X" in the square in the space for the office of sheriff on the Progressive ticket; and an "X" in front of the name of the defendant Reynolds on the Democratic ticket and an "X" in the square in the space for the office of sheriff on the Progressive ticket. There was no candidate for sheriff on the Progressive ticket. These two votes were correctly counted for the defendant Reynolds. *Hatfield v. Board of Canvassers of Mingo County,* 98 W. Va. 41, 126 S. E. 708. Another ballot contained an "X" in the square in front of the name of the defendant Reynolds on the Democratic ticket and a mark, but not an "X", in the square in front of the name of the petitioner on the Republican ticket. The intention of the voter was to cast his ballot for the defendant Reynolds and it was properly counted for him by the board.

In this group of thirty ballots are two ballots each of which was signed by the voter. They were questioned for this reason as the intention of the voter is clearly disclosed. Though the law forbids the voter to place, or to permit any other person to place, any mark upon his election ballot by which it may afterward be identified as voted by him, and makes such act an offense, Code, 1931, 3-7-7, such ballot will not be rejected because of such mark if it is valid in other respects. In *Doll v. Bender,* 55 W. Va. 404, 47 S. E. 293, this Court said in Point 4 of the syllabus: "Distinguishing marks on a ballot will not cause its exclusion from the count." To the same effect is the more recent case of *State ex rel. Simon v. Heatherly,* 96 W. Va. 685, 123 S. E. 795. Upon the authority of these cases these

ballots were properly counted for the defendant Reynolds.

One ballot in the group of thirty ballots disclosed an "X" in that part of the ticket designated "Democratic Ticket" with individual marks for various Democratic candidates on that ticket but no mark for the defendant Reynolds. The voter intended to vote the straight Democratic ticket, the particular marks for certain Democratic candidates were mere surplusage, and this ballot was properly counted for the defendant Reynolds. *State ex rel. Lambert v. Board of Canvassers of Nicholas County,* 106 W. Va. 544, 146 S. E. 378.

Another ballot in the group of thirty ballots bore these marks: an "X" in the circle at the head of the Democratic ticket and marks, but no "X", in the square opposite the name of the petitioner on the Republican ticket. This ballot is a straight Democratic ballot except for the Democratic candidate for sheriff and is a ballot for the petitioner for that office. *Shore v. Board of Canvassers,* 64 W. Va. 705, 63 S. E. 389. The board of canvassers should have counted it for him and not for the defendant Reynolds.

Three more ballots, also in the group of thirty ballots, respectively contained these separate marks on the particular ballots: an "X" in the circle at the head of the Democratic ticket, which "X" was marked out with pencil lines and no other marks appear on the ballot; an "X" in the square before the name of the defendant Reynolds on the Democratic ticket and a circle and other marks in the square before the name of the petitioner on the Republican ticket; and an "X" in the circle at the head of the Democratic ticket and an "X" and other marks in the circle at the head of the Republican ticket. The voter as to two of these ballots indicated an intention to vote for both of the candidates for sheriff and it is impossible to determine the final choice of the voter of each of the three ballots. For that reason these three ballots should not have been counted for either candidate and the action of the board of canvassers in counting them for the defendant Reynolds was erroneous.

The count of the ballots questioned by the petitioner, if correctly made, would show fifteen ballots not counted by the board for either candidate which should have been counted for the petitioner, one ballot counted by the board for the defendant Reynolds which should have been counted for the petitioner, or a gain of sixteen votes for him, and the loss by the defendant Reynolds of the one vote indicated which was erroneously counted for him, and three ballots counted by the board for the defendant Reynolds which should not have been counted for either candidate, or a total loss of four votes for the defendant Reynolds. The final result of a correct count would be to reduce the majority of the defendant Reynolds, by these twenty votes which were incorrectly counted, from forty four votes to twenty four votes in his favor. These changes, which should have been made by the board of canvassers, are not sufficient to affect or alter the result of the election. In consequence, the petitioner has not shown a clear legal right to the relief which he sought in this proceeding, and the writ prayed for was properly denied, at the cost of the petitioner, by the order entered by this Court on March 22, 1949.

*Writit denied.*